# Jackson County *v.* Derrick, *et al.*

*Bill in Equity to compel Sureties on the Official Bond of County Treasurer to an Accounting of the Fine and Forfeiture Fund, and to the Payment of such Part thereof as has been Misappropriated.*

1. *County treasurer; duties to individuals holding claims against county fund.*—The duty which a county treasurer owes to individuals is the payment from funds in the treasury of claims against the county and of claims on the fine and forfeiture fund, on presentation, in the order and upon the conditions of payment, as prescribed by the statute; and neither a misappropriation, nor a waste or conversion of funds coming to the possession of the treasurer, is such an injury to individuals having claims against the county or claims upon the fine and forfeiture fund, as would entitle them to maintain suits against the treasurer, or against the sureties on his official bond, because of such official delinquency.

2. *Fine and forfeiture fund; county has title thereto.*—While the fund arising from fines and forfeitures in the several counties is under the control of the legislature, and the General Assembly may prescribe what claims shall be paid out of it, their preference and the conditions of payment, still, under the provisions of the statute (Cr. Code of 1886, § 4894; Cr. Code of 1896, § 4714), the title and ownership in the fine and forfeiture fund is in the county itself; it being essentially a county fund, created for the use of the county, as distinguished from State funds, created for the use of the State.

3. *Same; right of county to maintain suit against sureties for misappropriation of said fund.*—A county has in and to the fine and forfeiture fund paid into the county treasury such right and interest as entitles it to sue a county treasurer for its misappropriation, or to maintain a bill against the sureties on the official bond of such county treasurer, to compel them to an accounting of the fine and forfeiture fund their principal had received, and to the payment of such part thereof as he had misappropriated; the right to maintain such action or suit residing in neither the State nor in individuals who have claims against the fine and forfeiture fund and who were disappointed by the official delinquency.

[Jackson County v. Derrick *et al.*]

4. *Bill by county to compel sureties of treasurer to an accounting; sufficiency thereof.*—Where a bill is filed by a county to compel the sureties on the official bond of a county treasurer to an accounting of the fine and forfeiture fund their principal had received, and the payment of such part thereof as he had misappropriated, the misappropriation consisting in the application of the fund to the payments of claims which were not legally chargeable upon it, and the averments of the bill, when read in connection with the exhibits thereto, show clearly that the payments averred to have been illegally made were certifi-cates of witnesses for the State, and also to whom the certificates were issued, and the amount of each certificate, such bill is not subject to demurrer, because it does not show the kind or character of the claims against the fine and forfeiture fund, which are alleged to have been illegally paid.

5. *Fine and forfeiture fund; payment of certificates without registration a misappropriation.*—Where, in a local statute prevailing in a particular county, regulating the payment of claims out of the fine and forfeiture fund of such county, it is provided that the clerk of the circuit court should enter in a book kept by the treasurer for that purpose, a certified list of all certificates issued to witnesses for the State, and further, that the list, when completed shall be delivered by the clerk to the treasurer of the county, and that he should pay the certificates in the order in which they are entered on the book, "and when a certificate is paid, the fact shall be marked on said book, with the date of payment, and the certificate shall be surrendered by the holder and cancelled by the treasurer," such provisions of the statute are not merely directory but mandatory, and before the certificates issued to witnesses can become a charge on the fine and forfeiture fund of such county, they must be registered, as provided; and, therefore, a payment of witness certificates, which had not been entered by the clerk of the circuit court in the book of the treasurer, is unauthorized, and constitutes a misappropriation of the fund, rendering the treasurer and his sureties liable.

6. *Estoppel against State and county.*—Estoppel can not arise against the State or a county thereof from the laches of its officers, since the persons who deal with the officers of the government or its subdivisions are bound to know the extent of thier power and authority.

7. *Estoppel against county; laches of clerk.*—In a suit by a county against the sureties on the official bond of the county treasurer for misappropriation of funds by him in paying unauthorized witness certificates, the county is not estopped from asserting the validity of the certificates so paid because of the laches of the clerk of the circuit court in failing to register such certificates as required by statute.

8. *Enforcement of lien of bond of county treasurer; jurisdiction in court of equity alone.*—The lien which the statute (Code of 1886, § 265; Code of 1896, § 3078), declares the bond of a county treasurer to be upon the property of the principal from the date of its execution, is

enforceable only in a court of equity; and a bill which seeks to enforce a lien on certain described real estate of which the county treasurer was seized at the time of the execution of his bond, contains equity, and should not be dismissed on motion.

9. *Equity pleading; motion to dismiss for want of equity does not reach amendable defects.*—Where the defects in a bill in equity are curable by amendment, such bill should not be dismissed upon a motion for want of equity, by reason of the existence of such defects; amendable defects in a bill not being reached by a motion to dismiss for the want of equity.

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by Jackson county, against the appellees, who were the administrator of one J. M. Dicus, deceased, and the sureties on the successive bonds of said J. M. Dicus, deceased, as treasurer of the county of Jackson.

The bill averred the election of Dicus as treasurer of Jackson county in the years 1888 and 1892 and that the respondents, with the exception of the administrator, were sureties on the bonds of said J. M. Dicus, which were given by him, as treasurer of said county, after his election in 1888 and 1892, respectively. That as said treasurer, he had, during each of his terms of office, received large amounts of money as treasurer, a large portion of which constituted the fine and forfeiture fund of Jackson county. The bill then avers as follows: "Under the laws of the State, and especially an act approved March 1, 1881, it was the duty of said Dicus to pay out of the fine and forfeiture fund witness certificates issued thereon, in the order in which they were entered on a book to be made out by the clerk of the circuit court and filed with the said treasurer. During both terms said Dicus, as treasurer, paid a large number of said certificates out of said fine and forfeiture fund which had not been registered at all. A list of the claims so paid by him, with the amount of each, is herewith filed and made exhibit C. hereto. Said claims were not legal claims against complainant or said fund. Complainant, after diligent effort, is unable to find all the dates of said respective payments, and can not ascertain during which term of office they were made. Said Dicus did not enter on his books all the dates of such payments, and there is no record showing all the correct

[Jackson County v. Derrick *et al.*]

dates of the respective payments. It is true, however, that part of the claims were paid during his first term of office and part of them during his second term. The book kept by said Dicus, as such treasurer under said bonds shows the said payments were made after April 1, 1891, and prior to March 31, 1893. Said Dicus, as treasurer, during said terms of office, paid many claims more than once, making the payments out of the said fine and forfeiture fund. The claims so paid by him amounted to more than $3,000. A list of such claims is made exhibit D. to this bill. Complainant, after diligent effort, is unable to ascertain and state all the dates of said several payments so as to show which of them were made during the second term. The said Dicus so kept his said books as treasurer as not to show all the dates of such payments. It is true, however, that part of said payments were made during his first term of office and part during his second term of office. Said payments were made between March 1, 1890, and May 31, 1893. Said payments shown by exhibits C. and D. were breaches of the official bond of said Dicus as treasurer, and the sureties on said bonds are liable for the breaches of said official bonds. Said Dicus, as treasurer, never made any settlement of his official trust, and the said sums so misappropriated by the said treasurer have never been accounted for or repaid to complainant. At the time of his said second election, said J. M. Dicus, was seized and possessed of the following described real estate: [Here followed a description of real estate situated in Jackson county.] The said last bond given by said Dicus, as treasurer, is a lien on said real estate. Said real estate is now in possessiion of W. A. Coffet, who claims to own the same. The infant defendant Farris Dicus, is the only heir at law of said J. M. Dicus. Said J. M. Dicus, as treasurer, during his said terms of office, overpaid many claims, making the payment out of the fine and forfeiture fund. The sums of money so overpaid by him amount to about $100, and perhaps more. A list of such claims, showing the amount overpaid on each, is made exhibit A. hereto. The book kept by the said Dicus, as treasurer, fails to show all the dates of said payments, and complainant is unable to ascertain which of the said payments were made during his first term of office and which during

[Jackson County v. Derrick *et al.*]

his second term, but the dates or approximate dates of said payments will appear in the further progress of this cause. Complainant alleges that the said overpayments made by the said Dicus were breaches of the official bonds of said treasurer, and that the sureties on said bonds are liable for the same. The said Dicus has never in any way accounted for or repaid to the complainant the said sums so misappropriated by him as treasurer.''

The relief prayed for was ''that a decree of reference may be had to a register appointed by the court, and that an account be taken between the complainant and said J. M. Dicus as treasurer; and that it be ascertained what sum was due the complainant on account of said defaults during said Dicus' first term of office; and what sum was due on account of said alleged defaults during his second term of office; and that he might be charged with all sums which he had improperly paid out and expended; and that a decree be rendered for complainant for such sums and that a lien be set and established upon the said real estate for the sum found to be due on account of defaults made during his said second term of office; and that said lands be sold for the satisfaction thereof; and that a personal decree be rendered against the sureties on his said first bond for all defaults and breaches of said bond made during his said first term of office; and that a personal decree be rendered against said sureties on said second bond for all breaches thereof and defaults made by said treasurer during his said second term of office; and that title to the said real estate at the sale thereof be divested out of said Farris Dicus and vested in the purchaser at such sale; and for all such other, further, general and different relief as the facts stated entitle it to.''

The defendant demurred to the bill upon the following grounds: ''1st. The bill does not show the kind or character of claims against the fine and forfeiture fund which are alleged to have been illegally paid, or what the said claims were for. 2d. Because it is not shown in the bill that the claims alleged to have been illegally paid were of a kind and character which the law required to be registered. 3d. Said bill alleged no reason why or from what cause the claims therein mentioned were not legal and just claims against the said

[Jackson County v. Derrick *et al.*]

fine and forfeiture fund. 4th. The want of registration, as set forth in said bill, does not and did not render the said claims invalid as alleged in said bill. The statute requiring claims to be registered in a book by the clerk of the circuit court of said county is merely directory, and his failure to perform said duty does not invalidate a lawful claim against the fine and forfeiture fund of said county. 5th. Complainant is estopped to set up the failure of its own officer, the circuit court clerk, to perform his official duty in regard to the registration of claims against said fine and forfeiture fund as a ground or cause of their invalidity. 6th. The bill does not show that said claims alleged not to have been registered were not issued to the holders for services actually performed for the complainant, such as authorized their issuance, or that they were not fully issued and signed by the proper officer, or that said holders had done anything to render said claims illegal, or that they had failed to do anything which the law required of them. 7th. Because the bill does not show that the claims against the fine and forfeiture fund of said county alleged to have been paid more than once by the said J. M. Dicus, treasurer, were paid more than once knowingly, or from any fault or neglect of the said J. M. Dicus, treasurer." The defendant moved the court to dismiss the bill for the want of equity.

On the submission of the cause on the demurrers and motion, the chancellor rendered a decree sustaining the motion, and dismissing the bill for the want of equity. From this decree the complainants appeal and assign the rendition thereof as error.

R. W. CLOPTON and SHELBY & PLEASANTS, for appellants.—The bond of a county treasurer is made a lien on the property of the principal from the date of its execution by section 265 of the Code of 1886, and the lien may be enforced in equity.—*Knighton v. Curry*, 62 Ala. 404. The bonds in this case were payable to the State of Alabama and not to the county, as required by section 911 of the Code of 1886, but this defect is cured by section 275 of the same Code.—*Lewis v. Lee County*, 66 Ala. 480.

While it is true that the fine and forfeiture fund is a State fund and under the control of the general assembly,

23

[Jackson County v. Derrick *et al.*]

a county is entitled to the use of the fund, and can maintain a bill to compel an accounting of such fund and to compel the payment of such part thereof as had been misappropriated.—*Edmondson v. DeKalb County*, 51 Ala. 105; *Lewis v. Lee County*, 66 Ala. 480; *Jackson County v. Gullatt*, 84 Ala. 243; *Moore v. Madison County*, 38 Ala. 670.

The statute makes the bond of a county treasurer a lien on the real estate owned by him. Independent of other allegations contained in the bill the fact that the bill was filed for the enforcement of this lien, created by statute, gave the court jurisdiction.—*Knighton v. Curry*, 62 Ala. 404; *Dallas County v. Timberlake*, 54 Ala. 403; *Watts v. Bank*, 76 Ala. 474. Having taken jurisdiction, to enforce the lien, the court would hold the entire case and adjudge the respective liabilities of the sureties. 1 Brick. Dig., 639, § 5; 3 Brick. Dig., 331, § 11.

MARTIN & BOULDIN, *contra*.—The payment of unauthorized State witness certificates is not a breach of the treasurer's bond for which the county may sue and recover the money thus paid out.—*Stone v. Ames*, 91 Ala. 644; *Sessions v. Boykin*, 78 Ala. 328; *Herr v. Seymour*, 76 Ala. 270; *Harold v. Herrington*, 95 Ala. 395. Registration is for the purpose of ascertaining the order of payment, in order to give certificates of State witnesses, when registered a priority over other claims. Under the Code it was manifestly the duty of the witness to present his certificate for registration, and no time was limited within which it might be done. It was not required to be audited and allowed by the county commissioners, so that the provision requiring claims against the county to be presented within twelve months had no application to these claims. They might, therefore, be presented at any time.—*Briggs v. Coleman*, 51 Ala. 561.

The act approved March 1, 1881, (Acts of 1880-81, p. 230), under which it is alleged that the certificates involved in the present suit were illegally paid, does not change the law in this respect, as it existed prior to its passage. The provisions of the fifth and sixth sections of said act, which provided for the registration of certificates of such witnesses, are merely directory, so far as the county treasurer are concerned.—23 Amer. & Eng.

Encyc. of Law, 458, 459, 460 ; Sutherland on Statutory Construction, 547-551 ; Sedgwick on Con. Statutes and Con. Law, 316 ; *Lancaster County v. City of Lancaster*, 28 Atl. Rep. 854, s. c. 160 Pa. St. 411 ; *Adams v. Sleeper*, 64 Vt. 544 ; *Thomas v. Chapin*, 22 S. W. Rep. 785 ; *Savage v. Walshe*, 26 Ala. 619 ; *Wood v. Terry*, 4 Lans. 80. The registration does not make the claim a charge on the county, but the facts certified to in the certificate. The registration is to determine the order of payment for the convenience of the treasurer, and in justice to the holders of claims. It determines when a claim should be paid, and not that the county owes the debt. So far as the county is concerned the claims are all due and payable.

. It should be noted that the Act of 1881, while it shows that the fund thereby created was intended also for the payment of officers, has no provision whatever for the verification, registration and payment of said officers' claims. Looking to this statute alone, no question could arise as to the priority of payment between these officers' claims, and registered or unregistered witness claims. It matters not to us whether the registration and payment of said claims is still governed by the act of 1879 or by the Code. In either event it is only a controversy between the holders of witness claims and officers claims as. to their respective priority. We repeat again that as to the county its lawful demands are being paid whether the claim is registered or not, and if the treasurer exhausts the fund without paying registered claims, either of witnesses or officers, the holders of such claims alone can complain. They are the *"persons aggrieved"* under the circumstances, and are the persons who may sue on the bond or apply for a *mandamus* as the facts of the case may warrant. To further illustrate our meaning let us consider the provision of this same statute of 1881, which requires that these registered claims of State witnesses shall be paid "in the order of their registration." There is no time limited ·within which the holder must present any given certificate for payment. Suppose the certificate first registered is not presented, would it then be unlawful to pay subsequent certificates? Certainly not. If the treasurer does not find it practical to pay in their exact order, which in practice he could never do, and should pay

[Jackson County v. Derrick *et al.*]

out of their order, would the county have the right to sue and recover the money which had thus gone to pay its honest and legal demands? This would be a kind of repudiation, and a shifting of debt to other shoulders, which we apprehend would receive the sanction of no court. It is manifest then that this provision for the payment of claims in the order of registration is merely directory so far as the county is concerned. If the treasurer pays out the money on later claims the holder of prior ones may call him to account in a proper instance, but not the county. This we understand to be the effect of the statutes, and of the decisions which have already been cited, and of others.—*Harold v. Herrington*, 95 Ala. 395; *Herr v. Seymour*, 76 Ala. 270; *Sessions v. Boykin*, 78 Ala. 328; *Stone v. Ames*, 91 Ala. 644; *Brown v. Parris*, 93 Ala. 314; *Palmer v. Fitts*, 51 Ala. 489; *Briggs v. Coleman*, 51 Ala. 561; *Mobile County v. Stone*, 69 Ala. 206; *Coleman v. Pike County*, 83 Ala. 326; *State v. Houston*, 78 Ala. 576.

BRICKELL, C. J.—The case is an appeal from a decree of the court of chancery, sustaining demurrers and dismissing for want of equity, an original bill for relief, in which the appellant was the party complainant. The principal purpose of the bill is, to compel the sureties on successive bonds of a deceased county treasurer, to an accounting of the fine and forfeiture fund, the principal had received, and to the payment of such parts thereof as he had misappropriated. The misappropriation consisting in the application of the fund to the payment of claims which were not legally chargeable upon it, and in the payment more than once, and in the overpayment of other claims which in their nature and character were chargeable upon and payable from the fund.

The argument chiefly pressed by the counsel for the appellees, in support of the decree dismissing the bill for want of equity, rests upon the proposition that a county has not in and to the fine and forfeiture fund, such right and interest, as entitles it to sue a county treasurer for its misappropriation—that the right of suit or of action resides exclusively in the State, or in claimants of the fund to whose use the statutes appro-

priate it, and who may be disappointed by the official delinquency.

The general statute now devotes the fund primarily, to the payment of the costs and fees attending the administration of the criminal law. The local statute prevailing in the county of Jackson, as will appear hereafter, in some particulars varies from the general statute, while it devotes the fund to like uses to which it is devoted by that statute; but it works no change in the duty and liability of the county treasurer in respect to the fund, nor in the ownership of the fund.

The fund had passed into the county treasury; there was no other depositary of it, and upon the treasurer devolved the duty of keeping and disbursing it according to law. Consistently with the allegations of the bill, the misappropriation imputed to the treasurer had not diminished the fund to such an extent that it was insufficient to satisfy all outstanding claims upon it, if any such claims there were. And if such claims existed, a misappropriation, nor the waste or conversion of the fund by the treasurer would not have furnished the claimants a cause of action. The duties of the treasurer are prescribed and carefully enumerated by the statute, (Code of 1886, § 915; Code of 1896, § 1429.) The greater part of these duties are owing to the public, as represented by the county, and are readily separable and distinguishable from the duties imposed for the benefit of individuals, and owing them peculiarly. The duty to individuals, as it may be summarized, is the payment from funds in the treasury of claims against the county, and of claims on the fine and forfeiture fund, on presentation, in the order and upon the conditions of payment, the statutes may prescribe. A misappropriation, or the waste or conversion of funds coming to the possession of the treasurer, would not avoid or excuse the neglect or non-performance of the duty, and is not the injury which entitles the individual having claims against the county, or claims upon the fine and forfeiture fund, to maintain suits because of the official delinquency—it is the non-payment of the claims on presentation, in the order and upon the terms and conditions of payment, the statutes may prescribe, funds having come to the possession of the treasurer properly applicable in payment, which constitutes the

official liability, and furnishes each disappointed claimant a cause of action.  In Mechem on Public Officers, § 597, it is said : "The liability of a public officer to an individual is based upon and is co-extensive with his duty to the individual or the public.  If to the one or the other he owes no duty, to that one he can incur no liability."  In the succeeding section it is said : "The first question for determination, therefore, in considering the liability of a public officer to private action, is whether that officer owes any duty to the individual complaining.  If he does not, then the individual has no right of action, even though he may have been injured by the action or non-action of the officer."  The safe-keeping of the moneys of the county, and their disbursement according to law, is the primary duty of the county treasurer—a duty owing to the public, and not to individuals.  If there is a breach of the duty, followed by a loss of the moneys, whether the loss results from misappropriation, or from waste, or conversion, the title to and ownership of the funds determines the right of suit or of action.  If title and ownership resides in the State, the county may not sue—and conversely, if title and ownership resides in the county, the State may not sue.—*People v. Ingersoll*, 58 N. Y. 1.  This brings us to a consideration of the remaining point, on which the argument in support of the decree dismissing the bill depends.

The constituents of the fund are *fines*—the pecuniary punishment of misdemeanors, the mulcts or penalties imposed for contempts by courts or judicial officers, and the penalties inflicted on non-attending jurors in obedience to summons ; *forfeitures*—the adjudged breaches of recognizances of bail taken in criminal cases, and of recognizances of witnesses for the State, and the penalties adjudged against such witnesses for neglect to obey the mandates of subpœnas issued to and served upon them.  Having these constituents, distinguished from all other public funds or revenues by the sources from which it is derived, the fund has existed from the earliest period of legislation.—*Scruggs v. Underwood*, 54 Ala. 186 ; *State v. Coleman*, 73 Ala. 550 ; *Herr v. Seymour*, 76 Ala. 273 ; *Sessions v. Boykin*, 78 Ala. 328.  Issuing from violations of the criminal law, and from the breaches of obligations and duties to the State, all of right, title and interest in

and to the fund and the consequent capacity to maintain
actions or suits, of which it may be the subject matter,
could not, in the absence of legislation providing other-
wise, reside elsewhere than in the State.

The fund, originally, was payable into the territorial
treasury, not impressed with or devoted to any particular
uses or purposes, subject, as were all other public funds
or revenues, to legislative appropriation, and the terri-
torial auditor of public accounts was authorized to
maintain suits against delinquent officers charged with
duty in respect to it.—Laws of Ala., 214, § 44; 216, §
56; 364, § 44; 365, §§ 1–6; 367, §§ 1–3.   In 1815, an
act was passed, as expressed on its face, "for the pur-
pose of providing a fund to pay county expenses," de-
claring among other things, that thereafter, all fines and
forfeitures should be paid into the treasury of the county
in which they were incurred, "and not into the territo-
rial treasury."   The clerks of the courts were required
to make to the county treasurer, the reports and accounts
of the fund, they had been required to make to the terri-
torial auditor of public accounts, and to pay him the
money when collected, at the same time, and in the
same manner, they had been required to make payment
into the territorial treasury; and the county treasurer
was authorized to maintain suits against officers delin-
quent in the performance of duty in regard to the fund.
Laws of Ala., 672, § 3.   Legislative power over public
revenue, from whatever source derived, no element of
contract intervening, compelling a particular application
or appropriation, is unrestrained by constitutional lim-
itation.   From the very nature of the fine and forfeiture
fund, because of the sources from which it is derived, it
is particularly true that legislative dominion over it is
absolute.—*State v. Stone,* 69 Ala. 206; *Sessions v. Boykin,*
78 Ala. 328; *Harold v. Herrington,* 95 Ala. 395.   Origin-
ally, a fund payable only into the general public treasury,
receivable only by the officers charged with duties in
respect to the territorial government, the legislation to
which we are referring, converted it into a county fund,
payable into the county treasury, charging the county
treasurer with the duty, and clothing him with the au-
thority in respect to it, which devolved on the territorial
auditor of public funds, while it pertained to the general,
public treasury.   And it must be observed that it passed

into the county treasury as it had existed in the territorial treasury, unimpressed by a devotion to any particular uses or purposes, not distinguished from other county revenue, subject to application or appropriation to any and all county uses. After the formation of the State government, the enactment was introduced into subsequent revisions of the statutes without other change than in verbiage—the substitution of the word *State* for *territory* and *territorial* (Aik. Dig. 200, § 10; Clay's Dig. 249, § 10); remaining of force, the general law governing the fund and its administration, until the adoption of the Code of 1852, though there was much of local legislation in respect to the fund, prevailing in different counties.

The Code of 1852 (§ 3619), declared: "All fines and forfeitures in State cases, unless otherwise provided, go to the county in which the indictment was found, and judgment is entered for the State for the use of the county." With changes of phraseology not now material, this section has been incorporated into each subsequent revision and codification of the statutes, and is now the general law touching the fund and its ownership.—Revised Code, 1867, § 3673; Code of 1876, § 4458; Criminal Code, 1886, § 4894; Cr. Code of 1896, § 4714. The history of re-enacted statutes, having the same subject matter, aids materially in the interpretation and construction of the later enactment, and this may suffice as a reason for the rather extended reference to the preexisting statutes creating the fund and directing its destination and uses. The Code of 1852 was a revision and re-enactment of all former statutes introduced into and forming part of it. And it has been said, that "it has long been a cardinal and controlling maxim, that where a law antecedently to a revision of the statutes is settled, either by clear expressions in the statutes, or adjudications on them, the mere change of phraseology shall not be deemed or construed a change of the law, unless such phraseology evidently purport an intention in the legislature to work a change."—Sedgwick Stat. & Const. Law (2d ed.), 365. The maxim has been applied in the construction of the Code. In *Landford v. Dunklin*, 71 Ala. 609, it was said: "The statute as embodied in the Code, is changed in phraseology. Words are omitted which were found in the former statute, but

there is no indication of a legislative intent to change or to modify the former statute—certainly not to vary the effect of the administration committed to the sheriff or coroner. No rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology, the omission or addition of words, will not necessarily change the operation or construction of former statutes. The language of the statute as varied, or the legislative intent to change the former statute, must be clear, before it can be pronounced that there is a change of such statutes in construction and operation." From the time of its original adoption, it has been of frequent observation, that "brevity of expression was, with the framers of the Code of 1852, a cardinal principle. The substance of two or more sections of statutes previously enacted, was condensed into one section or sentence, whenever their provisions and subject matter would permit such condensation."—*Rupert v. Elston*, 35 Ala. 79; *Posey v. Pressley*, 60 Ala. 243; *E. T., V. & G. R. R. Co. v. Hughes*, 76 Ala. 590. Under the pre-existing statute, as we have seen, fines and forfeitures passed into the county treasury, unaffected by a devotion or appropriation to particular uses, in its original form, expressing on its face the legislative intent to raise a fund to defray county expenses, charging the county treasurer with the duty of keeping and disbursing it according to law. The section of the Code of 1852, which has been substantially incorporated in the succeeding Codes, contains no words indicative of a legislative intent to change the nature and character of the fund, its custody, nor its administration. It is but one of the numerous instances of the condensation of former statutes; and a legislative intent to change the pre-existing statutes in meaning and operation can not be fairly deduced from it. Fines and forfeitures *go* to the county in which the indictment was found, unless otherwise provided, is the equivalent of saying *belong* to the county, when read in the light of the succeeding words and of legislative history. "And judgment therefor must be entered in favor of the State, for the use of the particular county," the judgment importing that while necessarily rendered in favor of the State, because it was the law of the State which was broken, or the breach of an obligation owing

the State, or the non-performance of a duty owing the State, the fruits of the recovery belonged to the county— the county had in them, the real, exclusive, beneficial interest. And in this connection, it may be observed, that until the adoption of the Penal Code of 1866, incorporated in the revised Code of 1867, the general law did not, with the exception of compensation of witnesses for the State in criminal cases in certain contingencies, devote or appropriate the fund to particular uses.

In some of our decisions, in construction of local statutes, and notably in the case of *Brown v. Parris*, 93 Ala. 314, to which we are now referred, it has been said, and very properly said, that the court of county commissioners has no authority or control over the fund. By which no more was intended, or could have been intended, than that the particular statute under consideration, divested them of all authority or control, by which they could deflect the fund from the particular uses to which the statute devoted it, appropriating it as they may appropriate the general funds or revenue of the county, nor were the claims on the fund subject to the audit and allowance of the court. This is now true of the fund as it exists under the general law, devoted to specific uses.

The particular question involved in *Brown v. Parris*, *supra*, was whether it was within legislative competency to revive claims against the fine and forfeiture fund of Marshall county, which were barred by the neglect to register them in accordance with a pre-existing statute. Legislative power over the fund, and its appropriation in legislative discretion, was declared as it had been declared in former decisions, to some of which we have referred ; and it was declared that the revival of the claims did not contravene section 56 of Article IV of the constitution. The part of the decision now relied on, is expressed as follows : "The court of county commissioners has no control over the fines and forfeitures, or power to dispose of the fund though placed in the custody of the county treasurer for convenient disbursement pursuant to law. Section 4458 of Code of 1876—section 4894 of the Code of 1886—which declares : 'All fines go to the county in which the indictment was found or the prosecution commenced, unless otherwise expressly provided, and judgment therefor must be entered in the

name of the State for the use of the particular county,'
does not operate to constitute the fines a county fund, or
to confer on the county commissioners any control of
them.    The control and disposition of the fund still re-
sides in the General Assembly, who has the power to
direct what claims shall be paid out of it, the preferences
and conditions of payment; which may be changed or
modified at pleasure—in short, the fines and forfeitures
constitute a State fund." It is obvious, all that is said,
in reference to the construction, operation and effect of
the general statute, is mere *dicta*, not essential to a de-
cision of the particular question before the court, and
not supported by the authorities referred to, which were
in construction of special or local statutes.    Besides, it
is in direct conflict with *State v. Allen*, 71 Ala. 543, in
which the question was whether fines belonged to the
State or county, and it was said by STONE, J.:. "The
proceeding, although in the name of the State, is for
Montgomery county.    The fine money does not go to the
State, but to the county.    In fact, these proceedings are
prosecuted in the name of the State for the use of Mont-
gomery county." It is obviously true, that dominion
over the fund resides in the General Assembly, as do-
minion resides over all county or State funds or reve-
nues, no element of contract intervening, compelling a
particular application or appropriation of them.    But
because this power resides in the General Assembly, does
not obliterate all distinction between State and county
funds and revenues.    The distinction exists in the stat-
utes, and we are not aware of any legislation tending to
its obliteration.    Whenever a fund is created for the use
of a county, and its use is localized, and its administra-
tion entrusted only to county officials, it is distinguished
as a county fund from funds created for the use of the
State, not localized to any division, or sub-division of
the State, and its administration entrusted wholly to State
officials; it is a State fund or revenue.    The fine and
forfeiture fund is essentially a county fund—of it
the State divested itself of all ownership and title,
and transferred ownership to the county.    Now, that
it has been appropriated to specific uses, from which
it may not be diverted, the county may stand in
the relation of a trustee.    Assuming this to be true, the
power and capacity of a trustee to maintain suits for the

misappropriation, waste, or conversion of trust funds, is undoubted.—*Carey v. Brown*, 92 U. S. 171. The fund is not a mere waif, uncertain in ownership—it belongs to the county, receivable only by the county treasurer, strictly a county officer charged with the duty of receiving, keeping and disbursing no other money than the money of the county, having an official bond payable to the county, the penalty of which is fixed by the court of county commissioners, which is taken and approved by the judge of probate, and the condition of which is broken, if the principal misappropriates, wastes or converts public moneys coming to his possession in his official capacity.—Code of 1886, §§ 910–15; Code of 1896, §§ 1426-1429; *Barnes v. Hudman*, 57 Ala. 504; *Lewis v. Lee County*, 66 Ala. 480; *Briggs v. Coleman*, 51 Ala. 561.

The first cause of demurrer to the bill was not well taken. If it be conceded, the bill because of generality would have been demurrable, if it had averred no more than illegal payments from the fine and forfeiture fund to a particular amount—that the kind or character of the claims must have been averred—with sufficient clearness, the bill read in connection with the exhibits, shows the payments averred to have been illegal, were of the certificates of witnesses for the State; to whom the certificates were issued and the amount of each certificate. The second, third, and sixth causes of demurrer may be considered together. The question they involve is, whether the treasurer had authority to pay claims which had not been entered on the book of the county treasurer, or to pay them otherwise than in the order in which they were entered. The question requires a construction of the fifth and sixth sections of the local statute (approved March 1, 1881), prevailing in Jackson county.

The fifth section requires the clerk of the circuit court, immediately after the term of the court, to "enter in a book kept by the treasurer, a certified list of all certificates issued by him during that term of the circuit court to witnesses for the State, by the clerk, and by the foreman of the grand jury, showing the order by date in which they were issued, to whom and for what amount, and for making the list, the clerk is entitled to a fee of two cents for each certificate, payable on the delivery of the list to the treasurer. The sixth section

[Jackson County v. Derrick *et al.*]

provides that on completion of the list it shall be delivered to the treasurer by the clerk, and that it shall be the duty of the treasurer to keep the book open to the inspection of all persons who have certificates described therein, and to pay the certificates in the order in which they are entered on the book; "and when a certificate is paid the fact shall be marked on said book, with the date of payment, and the certificate shall be surrendered by the holder, and cancelled by the treasurer." The statute is plain and unambiguous in its terms, and assimilates itself to all legislation, general or local, touching claims payable from the county treasury, whether subject or not to audit and allowance by the court of county commissioners, in the requirement that there must be authentication of them, registry by the county treasurer and payment in the order of registration. Until the clerk of the circuit court enters in the book of the treasurer the certificates issued by him, the certificates do not become a charge on the fine and forfeiture fund. The statute, as matter of grace, not of right, creates the charge, and prescribes the conditions on which the charge becomes enforceable, not the rendition of the service of attendance by the witness—nor the issue to him of the certificate as evidence of the rendition of the service, nor the two conjoined. The two must be conjoined, but the charge is not created until there is the entry in the book of the treasurer by the clerk of the circuit court. The rule of the common law is, that the State is not liable for costs or fees, and when a statute creates the liability, there must be compliance with the terms and conditions upon which the liability is made to depend.—*State v. Brewer*, 64 Ala. 287. There was, of consequence, error in sustaining these causes of demurrer—a payment of witness certificates which had not been entered by the clerk of the circuit court on the book of the treasurer, was unauthorized, a misappropriation of the fund, rendering him and his sureties liable.

The fourth cause of demurrer rests particularly upon the theory, that as it was the *laches* of the clerk of the circuit court, not to enter on the book of the treasurer the witness certificates he had issued, the complainant is estopped from asserting the invalidity of such certificates. It is a well settled doctrine, resting not on notions of mere prerogative, but upon the weightiest

considerations of public policy, that the State nor any of its governmental sub-divisions, are not estopped by the *laches* of public officers.—*State v. Brewer*, 64 Ala. 287. The claimants of the certificates knew that registration by the clerk of the circuit court in the book of the treasurer, was essential to create them a charge on the fine and forfeiture fund, and that without such registration the treasurer had not authority to pay them, and was compelled to pay them only in the order of registration. An inspection of the book, a matter of right, would have disclosed the *laches* of the clerk, and he could have been compelled to the performance of the duty of registration. Of consequence, that there was not registration, rendering the certificates a legal claim on the fund, resulted from the concurring negligence of the clerk and of the claimants.

The fifth cause of demurrer proceeds upon the proposition that the statute so far as it requires registration of the certificates issuing to witnesses is directory. The proposition manifestly contravenes the construction of the statute which we have adopted, and would defeat the plain intent of the legislature. There is much discussion in the books as to directory and mandatory statutes, and it is difficult to reconcile all that has been said and decided. There is a general principle recognized by all the authorities which gives complexion to the statutory requirement of registration, and that is, that statutory directions which are of the essence of the thing to be done are mandatory.—23 Am. & Eng. Encyc. Law, 153, 453.

We are of opinion the demurrers to the bill were not well taken, and should have been overruled.

The statute, (Code of 1886, § 265, Code of 1896, § 307), declares the bond of certain officers, including the county treasurer, "is a lien upon the property of the principal from the date of its execution." In *Dallas County v. Timberlake*, 54 Ala. 403 ; *Knighton v. Curry*, 62 Ala. 404, and several subsequent cases, it is held that the lien is enforceable only in equity. The bill seeks to enforce a lien on certain described real estate of which the deceased treasurer was seized at the time of his second election and the execution of his bond. This imparts equity to the bill, and renders erroneous the decree dismissing it for want of equity. Whether the bill is not demurrable because it

[Memphis & Charleston Railroad Co. v. Martin, Admr.]

seeks only an accounting of the fine and forfeiture, and not of all the accounts of the treasurer, and the enforcement of the lien for his default in this respect only, are questions not now raised by the record. If in this particular the bill is defective, the defect is curable by amendment, and amendable defects are not reached by a motion to dismiss for want of equity.—3 Brick. Dig. 390, §§ 371, 372, 379.

We have considered all questions presented by the record; and the result is the decree of the chancellor must be reversed and a decree rendered overruling the motion to dismiss the bill for want of equity, and the several demurrers, and remanding the cause for further proceedings in conformity to this opinion.

Reversed, rendered and remanded.