(88 South. 442)

**WALLACE v. BALL et al. (6 Div. 270.)**

(Supreme Court of Alabama. April 24, 1921.)

**1. Statutes ☒161(2)—Latter of two acts on same subject repeals former.**

Of two acts on the same subject, the one passed and approved two days after the first repeals it.

**2. Statutes ☒120(4)—Act relative to county bonds violative of constitutional provision act shall contain but one subject, clearly expressed in title.**

Act Oct. 8, 1920 (Gen. Acts 1920, p. 116), fixing the rate of interest on all bonds issued by counties and cities with a population of over 5,000 at not exceeding 7 per cent. per annum, and providing bonds bearing 7 per cent. interest shall not be sold below par, but that the board of revenue issuing bonds may fix a lower rate of interest and sell such bonds below par, etc., having a retrospective as well as a prospective operation, but the title not referring clearly to its retrospective intent and purpose, *held* violative of Const. § 45, providing each law shall contain but one subject, clearly expressed in its title.

**3. Counties ☒178—Statutes fixing rate of interest on bonds issued, etc., held as applied to a county where voters had authorized issue violative of constitutional provision requiring election before issue.**

Act Oct. 8, 1920 (Gen. Acts 1920, p. 116) fixing the rate of interest on all bonds issued by counties and cities with a population of over five thousand not exceeding seven per cent. per annum, and providing bonds bearing seven per cent. interest shall not be sold below par, but that the board of revenue issuing bonds may fix a lower rate of interest and sell such bonds below par, etc., *held*, as applied to a county where the voters had authorized bonds at the rate of 5 per cent., violative of Const. § 222, prohibiting issue of bonds under general law unless first authorized by a majority of the qualified voters at an election.

**4. Counties ☒178 — Amount of bond issue and rate of interest must be submitted to voters, but time of issuance need not be.**

Under Code 1907, §§ 160, 168, 170, the amount of a proposed county bond issue, the maximum rate of interest proposed to be paid, the time for which the bonds shall run, and the purpose for which they are to be issued must be submitted to the voters, but the time within which the bonds must be issued need not be submitted to them, though the vote on the matters required to be submitted is final.

———

☒For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from Circuit Court, Jefferson County; Dan A. Greene, Judge.

Bill by Sam Wallace against the Board of Revenue of Jefferson County and the individuals composing the same, to enjoin the sale of certain bonds and for general relief. From a decree denying relief, complainant appeals. Reversed, rendered, and remanded.

Robert J. Wheeler, of Birmingham, for appellant.

The election was held under the authority of article 8, c. 11, Code 1907, and the whole article became a contract between the electorate and the county authorities, and subsequent legislation could not change the contract or authorize a different disposition of the bond. McQuillin Municipal Corporations, §§ 2197–2203; 65 Ala. 403; 68 Kan. 177, 74 Pac. 649.

W. K. Terry, of Birmingham, for appellees.

There was no element of contract, and the Legislature had the right and the power to dispense with any inhibition in reference to the disposition of the bond which it had previously enacted. McQuillin, Munic. Corp. vol. 2, § 708; Id., vol. 4, § 1894; section 222, Const. 1901.

MILLER, J. Section 222 of the Constitution of Alabama of 1901 in part reads:

"The Legislature, after the ratification of this Constitution, shall have authority to pass general laws authorizing the counties * * * to issue bonds, but no bonds shall be issued under authority of a general law unless such issue of bonds be first authorized by a majority vote by ballot of the qualified voters of such county, * * * voting upon such proposition."

The right to issue the bonds must come from a majority vote by ballot of the qualified voters of the county, voting on the proposition. The Legislature has the right, and it is its duty, to provide general laws to ascertain the will of the voters on the bond issue.

On February 26, 1903, after the Constitution was adopted, the Legislature by an act (now sections 158 to 174, Code 1907, both inclusive), provided general laws for registering at an election by ballot a majority vote of the qualified voters of the county on issuing of bonds by the county commissioners and boards of revenue.

This law requires that notice by publication previous to the election shall be given; and it shall "state the purpose for which the election is to be held, and the time and place for holding same, the amount of the proposed bond issue, and the maximum rate of interest proposed to be paid, and the time for which the bonds shall run, and the purpose for which the bonds are to be issued." Section 160, Code 1907.

This law also provides that no bonds issued shall bear a greater rate of interest than 5 per cent. per annum, and no bonds shall be sold for less than par—face value; and all bonds shall have attached interest coupons. Sections 170 and 172, Code 1907.

Under this law the board of revenue of Jefferson county, Ala., called an election for February 16, 1920, for the purpose of submitting to the qualified electors of that county the following proposition, viz.:

"Shall the county of Jefferson, Ala., issue bonds to the amount of $5,000,000, bearing interest at the rate of 5 per cent. per annum, for the purpose of constructing public roads in said county?

"Said bonds to be issued $2,000,000 in 1920, $2,000,000 in 1921, and $1,000,000 in 1922, the $2,000,000 to be issued in 1920 to mature as follows: $250,000 in 1924; $200,000 in 1925; $150,000 in 1926; $250,000 in 1927; $250,000 in 1928; $300,000 in 1929; $300,000 in 1930; $300,000 in 1931.

"The $2,000,000 of bonds to be issued in 1921 to mature as follows: $400,000 in 1931; $425,000 in 1933; $500,000 in 1934; $525,000 in 1935; $150,000 in 1936.

"The $2,000,000 of bonds to be issued in 1922 to mature as follows: $450,000 in 1926; $550,000 in 1937.

"Jerry W. Gwin, President of the Board of Revenue of Jefferson County, Ala."

It is averred by the complainant and admitted by the respondents that the election was duly advertised and held according to law, as provided by article 8, c. 11, of the Code of Alabama of 1907, and that at the election the proposition to issue the bonds was carried and the authority granted to the board of revenue to issue them for the purposes mentioned.

This gave the board of revenue authority to issue and sell bonds not exceeding in amount $5,000,000 to be used to construct public roads in the county, provided the annual rate of interest on the bonds did not exceed 5 per cent., and provided the bonds were not sold for less than par—their face value. Now comes Sam Wallace, the complainant, a resident citizen and taxpayer of Jefferson county over 21 years of age, and avers the foregoing facts and the following: That the board of revenue could not sell the bonds for face value at 5 per cent. per annum interest, and that respondents are attempting and trying or have signified their intention to sell $650,000 of said bonds of the 1920 series at less than par to the highest bidder, and will sell, if they can secure no better price, the said amount of the bonds at as low a price below par as would make them yield interest to the purchaser at 7 per cent. per annum, which would be about 91 cents on the dollar. The respondents admit these averments.

The complainant asks the court to enjoin the respondents from so doing. The bill of complaint is sworn to and the respondents file

sworn answer; and the cause is submitted thereon. The court denied relief to the complainant and dismissed the cause, and this decree is assigned as error.

The pleadings show and respondents admit that they are intending to sell the bonds at less than par to net 7 per cent. per annum to the purchaser; and the respondents claim they are justified in doing so and authorized to do so by two acts of the Legislature of Alabama passed and approved since the election by the voters of Jefferson county on the bond issue. One act was approved October 6, 1920 (Gen. Acts 1920, p. 166), and the other was approved October 8, 1920 (Gen. Acts 1920, p. 116). The former authorizes the board of revenue to "dispose of the bonds of such counties * * * at the best price obtainable, as such boards may determine, but that in no case shall they sell such bonds below ninety-five (95%) per cent. of the par value, and whether the issuance of such bonds shall have been authorized prior to the adoption of this act or not." The latter act fixes the rate of interest on all bonds issued by counties and cities with a population of over 5,000 at not exceeding 7 per cent. per annum; and bonds bearing 7 per cent. interest shall not be sold below par; but the board of revenue issuing bonds may fix a lower rate of interest and sell such bonds below par. However, the discount on the bonds must not be more than will cost the county issuing them a greater rate of interest, taking the discount into consideration, than 7 per cent. per annum.

[1] The act of October 8, 1920, was passed and approved two days after the act of October 6, 1920. Both being on the same subject, the last one repeals the first one; so this leaves the act of October 8, 1920 (Gen. Acts 1920, p. 116). Bd. of Rev. v. Johnson, 200 Ala. 533, 76 South. 859.

[2] This act of October 8, 1920, states in its body:

"That it shall apply to bonds already authorized to be issued as well as bonds hereafter authorized."

The title to this act reads as follows:

"An act to regulate the rate of interest to be paid on county and municipal bonds, and to provide for the sale of such bonds."

Section 45 of our Constitution states:

"Each law shall contain but one subject which shall be clearly expressed in its title."

This act, in its body, makes it apply to bonds heretofore and hereafter authorized to be issued. It is prospective and retrospective as to the bonds and the interest and the discount thereon and the authority to issue them. The title of the act does not refer clearly to its retrospective and discount intent and purpose. In this it is strikingly

205 ALA.—40

misleading, and calculated to spring a "surprise on the Legislature." It looks like the design of the act is to cure ills in or care for bonds of the past rather than to provide for the future. The title looks to the future, and not to the past; but the body has oil for the sores of the past as well as the ills of the future. "Prospective laws are the rule, and retrospective laws are the exception." If the body of an act contains both, the title should clearly contain both. Does not section 45 of the Constitution condemn and declare void that part of this act which attempts to regulate the sale below par of, and to increase the interest on bonds heretofore authorized by the voters of a county to be issued? We think so; this heretofore retrospective, past, and discount subject not being clearly expressed in its title. Lindsay v. U. S. Savs. & Loan Ass'n, 120 Ala. 156, 24 South. 171, 42 L. R. A. 783; Barrington v. Barrington, 200 Ala. 315, 76 South. 81.

[3] Is this act not also in its retroactive and discount aspect condemned not only by section 45, but also by section 222, of the Constitution of Alabama? The part of section 222 applicable is quoted at the head of this opinion. It allows the majority of the qualified voters at an election called for that purpose in a county to authorize the board of revenue to issue bonds. The board of revenue submitted to the qualified voters of Jefferson county this question:

"Can we issue $5,000,000 in bonds at the rate of 5 per cent. per annum, under the law allowing sale of them at par, for purpose of constructing public roads in your county?"

A majority of the voters answered by ballot, "Yes." Now the Legislature attempts by this act, without any clear intimation thereof in its title, to authorize these bonds sold at a discount—below par—which will net to the purchaser 7 per cent. per annum on his investment. The interest on a bond is a part of the bond. If the Legislature can increase the rate of interest or sell the bonds below par after the voters authorized a sale at par and at 5 per cent. interest, then they can take away entirely from the majority of the voters the right to have the bonds issued. The Constitution gives the Legislature the right to fix the mode and manner of getting the will of the qualified voters on the bond issue; and it gives to the majority of the qualified voters at the election the right to authorize the issuance of the bonds by the board of revenue. The voters having fixed by ballot the amount of the bond issue, the maximum rate of interest, and under a law stating they must not be sold below their face value, it is then beyond the power of the Legislature to authorize a higher rate of interest thereon or a sale of these bonds below par.

[4] The power was in and the authority came from a majority of the qualified voters

of Jefferson county. When it is expressed, under the law then existing, their voice must be obeyed, if the bonds are sold. The Legislature cannot change the voters' will after it is expressed by the majority of ballots at the polls. Sections 45 and 222, Const. 1901; Lindsay v. U. S. Savs. & Loan Ass'n, 120 Ala. 156, 24 South. 171, 42 L. R. A. 783; Gen. Acts 1920, pp. 116 and 166; sections 158, 160, 170, and 172 of Code of 1907; Weakley v. Henry, 204 Ala. 463, 86 South. 46.

The board of revenue is authorized to issue $5,000,000 in bonds. They cannot issue more. They may issue less. They can issue none. These matters are in their sound discretion, as the necessity may exist for funds for the purpose of constructing public roads in the county. They can sell none below par. No bond must bear interest at greater rate than 5 per cent. per annum. They may issue $650,000 of the 1920 series, provided they are not sold below par, and do not bear a greater rate of interest than 5 per cent. per annum. There is nothing in the statute preventing bonds of the 1920 series, authorized by the voters, from being sold after that year. The law requires the "amount of the proposed bond issue, the maximum rate of interest proposed to be paid and the time for which the bonds shall run and the purpose for which the bonds are to be issued" to be submitted to the voters; but it does not require the time within which the bonds must be issued to be submitted to them. Their vote on the matters required by law to be submitted is final. Sections 160, 168, and 170, Code 1907; McQuillin, Municipal Corporations, vol. 5, § 2297; Moller v. City of Galveston, 23 Tex. Civ. App. 603, 57 S. W. 1116; Chickaming v. Carpenter, 106 U. S. 663, 1 Sup. Ct. 620, 27 L. Ed. 307; Weakley v. Henry, 204 Ala. 463, 86 South. 46.

The decree dismissing the bill of complaint is set aside, and decree will be rendered directing the writ of injunction prayed for to issue.

Reversed, rendered, and remanded.

All the Justices concur.

McCLELLAN, J. (concurring). I fully concur in the treatment and decision of the two main propositions in the opinion ante. Upon original consideration it appeared to the writer that under the express language of Code, § 168, the county governing body was imperatively required, without discretion, to issue the bonds voted for by the electorate "in the amount" mentioned in the notice of said election. Further consideration convinces the writer that the application of a settled rule of statutory construction to the apparently mandatory terms of Code, § 168, will not justify the view the writer originally entertained. It is established in this jurisdiction that—

"No rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology * * * will not necessarily change the operation or construction of former statutes. The language of the statute as revised, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of such statute in construction and operation." Landford v. Dunklin, 71 Ala. 594, 609; Jackson County v. Derrick, 117 Ala. 348, 360, 361, 23 South. 193.

Code, § 168, is a codification of section 10 of the act of 1903 (Gen. Acts, p. 93) where, instead of the words of the Code section "shall issue," the act provided that the county body "is hereby authorized to issue the bonds" voted for by the electorate. Under the provisions of section 10 of the original act, it is quite clear that the authorization there contemplated was not restrictive of the existence of a discretion in the governing body to issue a less amount of the bonds than that stated in the "notice of said election"; and, according to the stated rule of construction, there is no sufficient indication of a legislative purpose to change the effect of original section 10 through the molding thereof in different phrase into Code, § 168.

I therefore concur in the opinion of Justice MILLER.