175 So. 383

**DUNN CONST. CO., Inc., v. STATE BOARD OF ADJUSTMENT et al.**

**3 Div. 216.**

Supreme Court of Alabama.

June 17, 1937.

Wilkinson & Wilkinson and Frank A. Wilkinson, Jr., all of Birmingham, for appellant.

A. A. Carmichael, Atty. Gen., Silas C. Garrett, III, Asst. Atty. Gen., and Files Crenshaw, Jr., of Montgomery, Sp. Atty., for Board of Adjustment.

BOULDIN, Justice.

Appellant, Dunn Construction Company, Inc., instituted proceeding in the Montgomery circuit court for mandamus directed to the State Board of Adjustment, created by Act of September 14, 1935, Gen. Acts 1935, p. 1164.

From a judgment denying the petition, this appeal is prosecuted.

The case made by the record is this:

Appellant in 1934 entered into a contract with the State Highway Commission for the construction of a state highway project in Sumter county.

After full performance on the part of the contractor, a claim was presented to the State Highway Commission for alleged "injuries and damages in the sum of $23,288.47 because of a failure of the State Highway commission to provide proper engineering services and on account of the delay in securing some section of the right-of-way for the project that had not been obtained prior to the execution of the contract for the work."

Thereafter the engineering officers and maintenance commissioner of the highway department recommended to the State Highway Commission that "Since the claim is for breach of contract by the Highway Commission itself, the Contractor should present it to the State Board of Adjustment."

Thereupon in April, 1936, the claim was presented to the State Board of Adjustment.

Thereafter, September, 1936, the State Highway Commission, through the Attorney General of Alabama, filed a motion with the State Board of Adjustment to dismiss the claim on the ground, among others, that said board was without jurisdiction and authority to hear and determine the claim. On the hearing of this motion, September 25, 1936, the motion was granted. The order recited: "On consideration of the same the State Board of Adjustment is of the opinion that it has no jurisdiction to hear or determine the claim of Dunn Construction company as made by its petition in this cause filed or to adjudicate the matters in controversy."

Thereafter, October 31, 1936, the petition in this cause was filed praying for mandamus requiring the State Board of Adjustment to hear and determine the claim on its merits.

The state intervened by the Attorney General, and demurrers were filed on behalf of the state and the State Board of Adjustment. On the hearing of the demurrers, February 9, 1937, they were sustained by the trial court, and, petitioner declining to amend, the petition was dismissed.

By an act passed at an extra session, March 1, 1937 (Gen.Acts 1936–37, Ex.Sess., p. 205), after the appeal was taken in the cause, section 2 of the original Board of Adjustment Statute was amended, by inserting: "The Board shall have no jurisdiction over claims growing out of forfeitures or of contracts with any state agency, commission, board, institution or department where by law or contract said state agency, commission, board, institution or department is made the final arbiter of any disagreement growing out of forfeitures or of contracts of said state agency, commission, board, institution or

department, and, particularly, the Board shall have no jurisdiction of disagreement arising out of contracts entered into by the State Highway Department."

By another provision in the amended section the above limitations are made to apply to claims filed with the Board of Adjustment prior to this amending act.

Obviously, and it seems unquestioned, if these provisions of the amending statute are valid, the State Board of Adjustment now has no jurisdiction of this claim, and the case becomes moot.

As applied to this case, the amending act is challenged on the ground that it violates section 45 of the Constitution.

The act is amendatory in form, and fully conforms to section 45 in re-enacting and publishing at length section 2 of the original act as amended.

This section in the original act fully defined the several classes of claims to come before the State Board of Adjustment for hearing, including: "All claims against the State of Alabama arising out of any contract, express or implied, to which the State or any of its agencies, commissions, boards or institutions are parties, where there is claimed a legal or moral obligation resting on the State to make payment."

Any amendment withdrawing or extending the jurisdiction to hear and determine any class of claims was, therefore, clearly germane.

■ A title disclosing a purpose to amend a named section of an act whose title is given in full, with date of approval, suggests to the legislator at once proposed amendments relating to the subject matter of that section.

■ This general principle is not challenged, but it is argued that the provision withdrawing jurisdiction over pending claims is retroactive in character, and such a departure from the usual course of legislation that this purpose must appear in the title of the act.

The cases of Lindsay v. United States Savings & Loan Association, 120 Ala. 156, 24 So. 171, 42 L.R.A. 783, and Wallace v. Ball, 205 Ala. 623, 88 So. 442, are relied upon by appellant.

In answer to this contention it is aptly suggested that the original section was retroactive in character. It expressly looked to the adjustment of claims against the state of wide variety, not theretofore provided for in any way. It fixed no limitation of time for presenting claims, whether accruing before or after the creation of the State Board of Adjustment. State Board of Adjustment v. State, 231 Ala. 520, 165 So. 761. To cure this omission was one of the aims of the amending act.

But the broader principle, differentiating this statute from those treated in cases relied upon by appellant, is that the provision withdrawing this class of claims from the jurisdiction of the board is not retroactive. It deals with the jurisdiction of a state agency to further function. Without question this board, a creature of the Legislature, could be abolished at any time. In that case all pending claims would die with it in so far as their recognition and adjustment depended on the existence of such board.

A striking down of its jurisdiction in part, a withdrawal of the power to further function in a given zone, must needs have the like effect. A statute purporting to become operative on its passage, and which curtails the jurisdiction of the State Board of Adjustment, expressly excluding specified claims therefrom, operates prospectively on all claims of that class, whether pending or not, unless the statute prolongs the jurisdiction to dispose of pending claims. The express provision in this amendatory act withdrawing jurisdiction as to all claims whether theretofore filed or not merely clarifies and makes certain such intent. Ex parte State, 52 Ala. 231, 23 Am.Rep. 567; South & North Ala. R. R. Co. v. State, 53 Ala. 637; Id., 101 U.S. 832, 25 L.Ed. 973; First National Bank of Scottsboro v. Jackson County, 227 Ala. 448, 150 So. 690; 59 C.J. p. 306, § 462-d; Id. p. 289, § 443(2).

Again appellant relies on section 95 of the Constitution, saying: "After suit has been commenced on any cause of action, the legislature shall have no power to take away such cause of action, or destroy any existing defense to such suit."

This section is intended to supplement and make fully effective section 22, which reaffirms in our own Constitution the inhibitions of the Federal Constitution (art. 1, § 10) against ex post facto laws, or laws impairing the obligations of contracts.

As applied to the question before us, it must be construed in connection with section 14 of our Constitution, saying: "That

the State of Alabama shall never be made a defendant in any court of law or equity."

At common law the state was not subject to suit save by its own consent. That state of the law obtained when Ex parte State, supra, arose.

That decision fully reviewed the authorities and definitely declared that any consent given by the state was merely permissive, a matter of grace, and could be withdrawn at any time as to pending actions.

The present Constitution, section 14, goes further. It wholly withdraws from the Legislature, or any other state authority, the power to give consent to a suit against the state. Suits against the state include suits against state agencies as widely considered in our cases. See citations to section 14 in Michie's Code.

This section would, as of course, inhibit the setting up of any tribunal with power to entertain suits against the state. While the exigencies of this case do not necessitate a consideration of the field within which a State Board of Adjustment may be empowered to act, it is quite clear that the creation of such board is at the option of the state, that it cannot be invested with a jurisdiction over claims against the state analogous to suits against the state.

The Legislature, as often declared, has authority to make appropriations by way of relief where a moral obligation of a public character has arisen. State Boards of Adjustment may well be set up as a state agency, a fact finding body, with administrative and quasi-judicial powers in the administration of funds appropriated for such relief purposes, the law itself defining the class of claims and the principles of law on which the fund is to be administered.

As for claims arising from contracts with the state, including contracts through agencies authorized to contract on behalf of the state, it is to be observed that all persons dealing with the state are charged with knowledge that no one has authority to subject the state to suit. Not that the holders of state obligations are without remedy. When an obligation of the state to pay money is created by law, or by contract duly authorized, somewhere there is a duty imposed on a public officer or officers to make payment from the funds appropriated therefor. Performance of such official duty, in a wide range of cases, not necessary to here review, may be compelled by mandamus. This class of claims is evidently intended to be excepted from the jurisdiction of the State Board of Adjustment by the clause in section 2, excluding "Any matter or claim of which the courts of the State have jurisdiction."

All these considerations give emphasis to the view that section 95 of the Constitution does not apply to proceedings before the State Board of Adjustment.

By no process of sound reasoning can it be said that no suit may be brought against the state, yet, a proceeding on a claim before the State Board of Adjustment is a suit on an existing cause of action protected under section 95.

To hold the pendency of a claim against the state before the State Board of Adjustment, a suit on a cause of action against the state would result in denial of any jurisdiction in the State Board of Adjustment by virtue of section 14 of the Constitution.

We hold, therefore, that the provision of amended section 2, withdrawing all jurisdiction over claims of this class, including those theretofore filed, is not subject to constitutional objection under section 45 or 95.

It follows no mandamus could now issue requiring the State Board of Adjustment to hear and adjust this claim.

It becomes unnecessary to decide any other question presented. This opinion should not by implication be taken as expressive of any views touching the power of the Legislature to empower a Board of Adjustment to deal with any claim for damages arising from breach of contract with the state, or especially the State Highway Department, recognized in constitutional amendments as the state agency to represent the state in highway matters; nor do we intimate any views as to the authority of any agency to approve claims based on its own dereliction in the performance of the obligations it has undertaken to perform on behalf of the state.

The duty to perform is of utmost importance both to the public and the contractor. Lack of faith in a department's meeting the obligations of the state under construction contracts may react unfavorably in letting contracts. But the power to apply state funds to bills for

damages alleged to arise from the failure of such agency to properly function for the state is quite another matter.

Affirmed.

ANDERSON, C.J., and GARDNER and FOSTER, JJ., concur.