# Shaver, as County Superintendent, &c. v. Robinson, as Tax-Collector of Montgomery County.

1. *The poll-tax must bear the expense of its assessment and collection.* Although the constitution requires that the money derived from the poll-tax shall be applied exclusively " in aid of the public school fund," it must bear the expense of its own assessment and collection.

2. *The Auditor can determine the amount of commissions due the assessor and tax-collector.*—The money raised by the poll-tax is not paid into the treasury of the State, but the Auditor, in settling with the tax-collector is clothed with authority to decide the amount of commissions due to the assessor and collector from the " poll-taxes in that settlement." Beyond this, his authority does not extend.

3. *The Auditor can not direct the commissions earned in one year to be paid from the taxes of another.*—The Auditor has no power to direct a tax-collector to retain from the poll-tax collected during the current year, the commissions earned by collecting this fund in preceding years.

[Shaver v. Robinson.]

APPEAL from the City Court of Montgomery.

Tried before the Hon. JOHN A. MINNIS.

This is a motion made by L. A. Shaver, as county super-intendent of education of Montgomery, in the City Court of Montgomery, against Patrick Robinson, as tax-collector of Montgomery county, to recover a summary judgment for seven hundred and eighty-nine dollars, the amount of poll-tax collected by him from the tax-payers of the said county, in the month of October, 1877. The defendant interposed a demurrer, which was overruled by the court. The defendant then pleaded the general issue and payment.

On the trial it was proven that the defendant had been tax-collector of Montgomery since 1870. And in 1875 he had paid to the plaintiff all the poll-tax collected by him, without deducting therefrom the commissions of the assessor and collector; but the Auditor had allowed the commissions due on the poll-tax collected, out of other money. But, after the payment of all the poll-tax collected in 1876 to the plaintiff, the Auditor refused, in his settlement with the defendant for that year, to allow him the sum of three hundred and fifty-five 79-100 dollars, as commissions due the assessor and collector on the poll-tax. It was also shown, that the Auditor revised the settlement made by the defendant as said tax-collector with the Auditor, for the year 1875, which had been closed by the predecessor of the Auditor, and charged the defendant with the sum of one hundred and eighty-eight 81-100 dollars, which had been allowed him on the said former settlement. The Auditor instructed the defendant to retain the sum of one hundred and eighty-eight 81-100 dollars as commissions, formerly allowed for the assessment and collection of the poll-tax of 1875, and also three hundred and fifty-five 19-100 dollars, as commissions on the poll-tax of 1876, out of the poll-tax collected in the year 1877.

The evidence showed that the defendant, in the month of October, 1877, collected poll-tax to the amount of seven hundred and eighty-nine dollars, and pursuant to the instructions of the Auditor, he retained from this sum the commissions of the assessor and collector, earned by services relative to the poll-tax in the years 1875 and 1876, besides sixty-three 12-100 dollars, the commissions due these officers from the poll-tax collected in 1877. He paid the remainder, one hundred and eighty-one 28-100 dollars to the plaintiff.

The evidence also showed, that from 1870 until 1876 the expenses of assessing and collecting the poll-tax of Montgomery county had never been borne by the money derived

[Shaver v. Robinson.]

from the poll-tax, and the defendant had never been informed of this change of the construction of the law until his settlement with the Auditor in 1876.

The court rendered judgment, requiring the commissions of the assessor and collector, earned by the assessment and collection of the poll-tax in 1876 and 1877, to be paid out of the poll-tax collected in 1877; and refused to render a judgment against the defendant for the sum of three hundred and fifty-five 19-100 dollars, and for sixty-three 12-100 dollars, the amount of commissions due on the poll-tax for the years 1876 and 1877 respectively. To this action of the court the plaintiff excepted.

And the court denied that the Auditor had authority to set aside and vacate an allowance or credit permitted in a settlement of the account of the defendant as tax-collector with the predecessor in office of the present Auditor, and rendered a judgment against the defendant for " the sum of one hundred and eighty-eight 81-100 dollars, with the further sum of thirty-seven 76-100 dollars, being twenty per cent. damages, together with the sum of five 60-100 dollars interest on the said sum of one hundred and eighty-eight 81-100 dollars from the first day of November, 1877." And to this judgment the defendant excepted.

D. S. TROY, and L. A. SHAVER, for appellant.—1. The law requires the tax-collector to pay over to the county superintendent of education of this county *all the poll-tax collected;* the collector has no authority to retain any portion whatever for assessor's or collector's commissions, or for any other purpose.—Constitution of Ala. § 1, art. 11. This section of the constitution is the strongest possible enunciation of the above proposition; the language used is imperative, plain and unambiguous, and there is no room left for construction. *Bartlett v. Morriss,* 9 Port. 268–9; Sedg. on Stat. and Const. Law, 379; ib. 486.

2. Admitting, however, that section 1, article 9, of the constitution, is ambiguous and open to construction, and that we are permitted to gather light as to the *intention* of the convention in adopting it from *extrinsic* sources of information, we find those sources to be in direct confirmation of the position for which we contend. In this connection we note the fact, that section 1, article 9, of the present constitution, is a re-enactment of section 1, article 9, of the constitution of 1868. It is material then to ascertain what had been the *legislative exposition* of the latter prior to the adoption of the

[Shaver v. Robinson.]

former.    We find this exposition to have been uniformly to the effect, that the poll-tax shall be applied "exclusively in aid of the public school fund."—Acts, 1868, top p. 54; ib. § 4, p. 299; Acts, 1874–5, § 3, p. 5; Code, §§ 1010, 1113, 3397.    With these repeated legislative expositions of section 1, article 9, of the constitution of 1868, before them, the convention of 1875 re-enacted that constitutional provision *without modification.*

Legislation subsequent to the present constitution has been almost equally as uniform to the same effect:—Acts, 1875-6, § 1, p. 45; ib. § 7, p. 116; Code, § 1003, subd. 7; Acts, 1876-7, p. 199; Code, §§ 1134, 1136.

It is significant, that the acts of March 6, 1876 (Acts 1875-6, p. 45), and of February 18, 1876, were adopted by a legislature largely composed of members of the constitutional convention of 1875.    The three acts relied upon by appellee, to-wit, section 11, of the act of March 19, 1875 (Acts 1874-5, p. 61), the act of March 6, 1876 (Acts 1875-6, p. 59), and of February 8, 1878 (Acts 1876-7, p. 199), in so far as they conflict with our positions, are unconstitutional. Section 11 of the first of these acts is negative in its terms, does not mention the poll-tax, was not brought forward into the Code, and was only intended to preserve the *status in quo* on the subject unaffected by the other provisions of the act.

The proof, moreover, is, that the *invariable custom* had been heretofore to pay over the *entire* poll-tax to the county superintendent, and for the State Auditor to allow the tax-collector, assessor's and collector's commissions on annual settlement with the State.    The court will take judicial notice of this custom.

3. Section 1, article 9, of the constitution of 1875, can not be held to be merely directory.—Sedg. Stat. and Const. Law. p. 374; *People v. Schermerhorn,* 19 Barb. 540. This provision of the constitution is a *limitation on legislative power,* and such limitations in a *State* constitution are never held to be directory.—*Collins v. Henderson,* 11 Bush (Ky.) pp. 90, 91, 93.    If the legislature may appropriate eight per cent. of the poll-tax otherwise than to school purposes, it may so appropriate fifty per cent. or the whole fund, and thus render the constitutional restriction mere *brutum fulmen. Collins v. Henderson, supra,* pp. 96, 91.

4. If we be wrong in the position, that *all* the poll-tax collected should be appropriated in aid of the public school fund, then we say, in the second place, it is clear that all of

[Shaver v. Robinson.]

it should be so appropriated except the three per cent. commissions of the assessor. *Section 424 of the Code is an express direction to the Auditor to allow the tax-collector his five per cent. commissions.*

5. Admitting, for argument's sake, that the assessor's three per cent. commissions are a proper charge on the school fund, still the whole poll-tax should be paid over to the county superintendent, and that officer should pay the assessor his commissions. In this way only can section 402 of the Code be made to harmonize with the numerous other sections requiring the collector to pay over *all* the poll-tax collected to the county superintendent. In this view of the matter, the motion for the recovery of *all* the poll-tax retained should have prevailed.

6. The tax-collector has no shadow of right to retain, out of the poll-tax of 1877 commissions of the assessor and collector on poll-tax collected during the years 1875 and 1876.

JOHN W. A. SANFORD, Attorney-General, with whom were BRAGG & THORINGTON, for appellee.—1. Such expressions in the constitution as "only" and "exclusively," "faithfully applied" and "inviolable," when used in connection with the school fund and poll-tax mean nothing more than that the money so derived shall be applied to none other than educational purposes; but such terms do not prohibit the legislature from requiring the fund to bear the burden of its assessment and collection. Similar expressions are found in acts which provide the poll-tax shall bear the expenses of its assessment and collection.—Acts 1874-5, p. 61, § 11—p. 19, §§ 37, 38; Acts 1875-6, pp. 58, 59, § 15.

2. The poll-tax is a gratuity from the State to the school fund, and must be taken *cum onere*, as to the expenses of its assessment and collection. The officers who perform these duties are entitled to their compensation from the fund as much as the county superintendent, who is paid one per cent. for its disbursement.—Acts 1876-7, p. 208, § 12.

3. It is expressly provided that the compensation of the assessor shall be paid from the poll-tax, for its assessment. Acts 1874-5, p. 19, §§ 37, 38; Acts 1875-6, pp. 58, 59, §§ 14, 15. The several provisions of law, when construed together, also show that the fees and commissions of the tax-collector for collecting it should be paid out of this fund. Acts 1874-5, p. 24, § 54; ib. p. 61, § 11; Acts 1875-6, p. 66, § 19; Acts 1873, p. 8, § 9.

4. No credit can be allowed any public officer for collect-

[Shaver v. Robinson.]

ing any of the revenue of the State otherwise than by a settlement with the Auditor.—Revised Code, § 414, par. 6. And although the poll-tax is not paid into the treasury of the State, but is kept in the several counties, no settlement of a tax-collector with the Auditor would be complete which did not embrace it. And the Auditor has authority to allow the officers their compensation for the assessment and collection of the poll-tax out of the money so received.

PER CURIAM.—The constitutions of 1868 and 1875 each ordains "That the General Assembly may levy a poll-tax not to exceed one dollar and fifty cents on each poll, which shall be applied exclusively in aid of the public school fund." It is contended before us that the word "exclusively" requires that the entire sum of the poll-tax, without abatement or diminution for any purpose, shall become part of the school fund. We think this construction too narrow and strict. The exact meaning of the convention, as we understand it, is that the poll-taxes shall, for all time, constitute a school fund, which shall not and can not be appropriated to any other object. It was not contemplated that it should be relieved of the common burden of all revenue raised under our statutes—the expense of its own assessment and collection. We think the following provisions of our statutes do not violate the clause of the constitution, copied at the opening of this opinion. " Act to revise and amend ' an act to keep in each county of this State a proportionate share of the public school money,'" approved March 19, 1875—section 11 thereof; Pamph. Acts, 56 ; section 38 of the Revenue Law of 1875, page 19; section 15, ch. 5, Revenue Law, approved March 6, 1876, pages 58–9 ; section 9, page 8, of act to keep proportionate part of public school money in each county, approved April 19, 1873; section 42 of the Revenue Law of 1868, page 312; Code of 1876, sections 402, 414, 424. So, we think it was competent for the legislature to charge upon the poll-tax fund the commissions of its assessment and collection.

In the Revenue Law of 1868, section 59, page 316, after declaring the rate of commissions to be paid the tax-collector, graduated by the amount of taxes collected, and directing that the collector " shall be authorized to retain the same rate of commissions out of the county taxes," the statute further enacts that the collector " shall be allowed by the auditor five per cent. for collecting the poll-tax." At that time the poll-tax and other school moneys raised by taxation

[Shaver v. Robinson.]

were required to be paid into the State treasury, thence to the superintendent of education, and the fund was then distributed and paid by him to the several county superintendents. The law being thus, and the poll-tax passing into the treasury after, and pursuant to a settlement with the Auditor, there was a fitness in confiding to that officer the adjustment of the tax-collector's commissions. Under the statute "To keep in each county of this State a proportionate share of the public school money," approved April 19, 1873—Pamph. Acts, 6—it was ordered "that each tax collector shall, at the end of every month, pay all poll-taxes collected during such month, to his county treasurer, and take his receipt for the same in duplicate, endorsed and approved by the probate judge of his county, and the tax-collector shall immediately forward one of these receipts to the State Superintendent of Public Instruction, and a similar receipt shall be received as cash in the settlement of his accounts with the State Auditor." This section shows that the tax-collector's settlements, even for the poll-taxes collected, were still to be made with the Auditor, although the poll-taxes were not to be paid into the State treasury. The ninth section of this statute enacts "That nothing in this act shall be so construed as to prevent any school money from bearing its proportionate part of the expense of assessing and collecting the same." As the statute then stood, the Auditor was to determine the amount of the tax-collector's commissions for collecting the poll-tax, but it was to be taken out of the poll-tax fund. At the present time, and under the act "To organize and regulate a system of public instruction for the State of Alabama," approved February 8, 1877—Pamph. Acts, 199—it is declared that "the poll-tax collected in each county [is] to be retained therein for the support of public schools thereof." Section three of the same act declares that the county superintendent shall receive and keep the educational fund of his county, including poll-taxes, "exclusively for the use of public schools," giving the tax-collector receipts, &c.—See Code of 1876, §§ 1010, 1013, 1134. And, since December 17th, 1874, the school money of the county is required to be paid to the county superintendent of education.—Code of 1876, § 1112. On such payment, the tax-collector takes from the county superintendent "receipt in duplicate for the amount so paid, which receipt shall specify whether the money thus paid was money collected as poll-tax or otherwise; and one of the receipts shall be received as cash in his settlement with the Auditor."—Ib. Through all our chang-

[Shaver v. Robinson.]

ing legislation since 1868, the clause has been retained that the tax-collector " shall be allowed by the Auditor five per cent. for collecting the poll-tax, [Code of 1876, § 424], although, since April 19th, 1873, the poll tax money has not gone into the State treasury, nor been paid through the Auditor. Section 402 of the Code of 1876 still retains the clause that " the assessor shall be allowed three per cent. for making list and keeping book of poll-taxes, . . . which shall be paid out of the poll-tax." And, in enumerating the sources of revenue " for the maintenance of a system of public schools throughout the State," section 1006, subdivision 6 of the Code of 1876, copying from the act of February 8, 1877, expresses and includes only " The *net* amount of poll-tax which may be collected in this State." We think it clear that through all our changing legislation, the expense of assessing and collecting the poll-tax, has been made a charge on the fund itself.

Was the Auditor clothed with power to authorize the tax-collector to retain out of the poll-tax fund to be collected for 1877, the commissions due to him and the assessor for assessing and collecting the poll-taxes for 1875 and 1876? No statute has been brought to our attention which confers this power, and we have not been able to find any warrant for such order. True, the Auditor, in settling with the tax-collector, is clothed with authority to decide the amount of commissions due to the assessor and collector in regard to the poll-taxes embraced in that settlement; but his authority does not extend beyond this. His order, if given, was utterly void. Neither can the statute of set-off avail the tax-collector. It does not reach such a case as this.—*Hibbard v. Clark*, 56 N. H. 155; *Finnegan v. City of Fernandina*, 15 Fla. 379; *Cobb v. Corp. Eliz. City*, 75 N. C. 1. Taxes and the support of the common schools are wants vital to the public welfare, which can not be defeated by cross demands, however equitable and meritorious. We admit the hardship in the present case, but the legislature is alone competent to relieve it.

It results from what we have said that the tax-collector is entitled to retain for his own and the assessor's commissions for the year 1877, but not for the previous years.

The judgment of the City Court is reversed, and the cause remanded to be proceeded in according to the terms of this opinion.

Whether the present Auditor rightly reviewed and reversed

[Durr v. Jackson.]

the ruling of his predecessor as to commissions for 1875, is not before us, either as to parties or subject-matter. We will not consider it.