# The State, *ex rel.* Greene County *v.* Coleman, Treasurer.

## *Mandamus.*

1. *Fine and forfeiture fund; definition of.*—The fine and forfeiture fund of the counties of the State may be defined as a fund accruing from pecuniary penalties and punitive impositions, incurred by defendants in the enforcement of criminal prosecutions, in the nature of profits arising from our system of criminal procedure.

2. *Same; what moneys belong to.*—To that fund belong moneys received from the hire of convicts sentenced to hard labor for the counties (1) in felony cases, (2) in misdemeanor cases, on default in the payment of fines, and (3) for additional terms to pay costs and officers' fees.

APPEAL from Greene Circuit Court.

Tried before Hon. SAMUEL H. SPROTT.

The case made by the record is sufficiently stated in the opinion.

J. B. HEAD and J. P. McQUEEN, for appellant, cited *Scruggs v. Underwood*, 54 Ala. 187; *Palmer v. Fitts*, 51 Ala. 491; *Mobile County v. Stone*, 69 Ala. 208; Code of 1876, §§ 4455, 4465—84, 4731, 944.

TROY & TOMPKINS and WM. P. WEBB, *contra*, reviewed at length the legislation in this State touching the fine and forfeiture fund, and cited the following statutes and authorities: Clay's Digest, pp. 247–9; *Ib.* p. 296, § 37; *Ib.* p. 600, § 7; *Ib.* p. 441, §§ 22–3; Toulmin's Digest (Ed. 1823), p. 891, § 8; *Ib.* p. 215, § 51; Aiken's Digest (Ed. 1836), p. 230; Code, 1852, §§ 3625–7; Pamph. Acts, 1862, pp. 73–4; Pamph. Acts, 1864, p. 79; Penal Code, 1866, §§ 213, 218, 511, 792; Code, 1876, §§ 435, 745, subd. 2, 820–4, 4459–64; *Wilson v. The State*, 46

[The State ex rel. Greene County v. Coleman, Treasurer.]
Ala. 190; *Morgan v. The State,* 47 Ala. 34; *Caldwell v. The State,* 55 Ala. 133.

SOMERVILLE, J.—It is sought, by the writ of *mandamus,* in this case to compel the appellee, as treasurer of the county of Greene, to transfer from the fine and forfeiture fund to the general treasury of the county certain described moneys, which are held by him in his official custody.   These moneys, thus in controversy, were all received from the hire of convicts sentenced to hard labor for the county of Greene, and accrued from three particular sources :   (1) Convicts sentenced on default in making payment of fines in misdemeanor cases (Code, 1876, § 4455); (2) convicts sentenced to additional hard labor for a term sufficient to pay costs and officers' fees (Code, § 4731); (3) convicts sentenced to hard labor in felony cases (Code, §§ 4465 *et seq.*).

It is our opinion that all of these moneys belong to the fine and forfeiture fund, and are no part of the general fund of the county, and that, for this reason, the writ of *mandamus* was properly refused by the circuit court.

When convicts are let to hire, under the hard labor system authorized to be established for the several counties of this State, whatever may be the purpose of such hiring—whether for one or more of the foregoing objects—the bond of the hirer is required to be taken, in a penalty of double the amount agreed to be paid for hire, with two good and sufficient sureties. This bond is made payable to the county, and when a recovery is had upon it by suit, the amount recovered is required by statute to be "paid into the county treasury."—Code, §§ 4470, 4472.   It is thus made manifest that these several funds all stand on the same footing, the statute making no distinction between them, each of them finding the same destination, the county treasury.   There is nothing in these provisions, however, which gives character to these moneys, or indicates any legislative intention as to whether they are to belong to the fine and forfeiture fund, or to the general fund of the county, since moneys accruing from both sources are paid into the county treasury.

The fine and forfeiture fund does not seem to have been definitely explained by legislation.   It has been recognized, however, by statute as having an existence from the earliest history of our State and Territorial legislation, and its nature, as well as the charges upon it, have undergone constant legislative changes from year to year.   It has been held to include fines imposed as a punishment for various crimes, or contempts, penalties incurred by parties and witnesses for disobedience of the process of court, and forfeitures of undertakings of bail,

[The State ex rel. Greene County v. Coleman, Treasurer.]

and the like.—*Scruggs v. Underwood,* 54 Ala. 186. It may, in our opinion, be.more generally defined as a fund accruing from pecuniary penalties and punitive impositions, incurred by defendants in the enforcement of criminal prosecutions, in the nature of profits arising from our system of criminal procedure. The clear purpose is evinced on the part of our General Assembly to make this system sustain itself, as far as practicable, without being a burden upon the general treasury, either of the State or county, further than absolutely necessary; hence, the policy of creating the fund, and charging it with the payment of the fees of State witnesses, and of certain officers of court, and of removing it entirely from the financial control of the court of county commissioners, who have no power to disburse or create charges upon it.—*The State ex rel. Mobile County v. Stone,* 69 Ala. 206; Code, §§ 4459, 4461. It is true that hard labor for the county includes "labor on the public roads, public bridges and other public works in the county," and the commissioners' court, by virtue of the express provisions of the statute, have both the right and power to reduce the fund under consideration by appropriating the labor of convicts to these specified public uses for the county. The special authority thus given to appropriate the labor of convicts for a specified purpose excludes by implication, however, the power to appropriate it for other purposes, or to control in any man-. ner the proceeds of their hire when reduced to money. The several funds in controversy would seem very plainly to fall within the above definition which we have given of the fine and forfeiture fund, as intended to be created by our system of legislation. There can be no doubt whatever about the first two, where the money is received from hire of convicts on default of payment of fines in misdemeanor cases, and where convicts are sentenced to pay costs and officers' fees. If these moneys had been paid directly into the treasury without any sentence, it is not denied that they would go to the fine and forfeiture fund under the express provisions of the statute. The fact that they are collected indirectly, through the instrumentality of a sentence to hard labor, can not change the nature or direction of the fund. The sentence only affects the *quo modo* of the collection, or enforcement of payment. It being shown or admitted that these funds go to the fine and forfeiture fund, and the third being made payable to the same payee—the county—and secured by the same written obligation—the hirer's bond—and all being of the same general nature, because they accrue from the profits of criminal prosecutions, it seems reasonable that all of them should belong to one and the same class, and go in one direction for similar uses— the support of our system of criminal procedure.

[Motes v. Carter.]

This view is strengthened by the fact, that our statutes seem to confer on the courts of county commissioners no control over any moneys except such as are raised by taxation, either for general or particular purposes. They are given authority to levy taxes to a limited extent, in order to pay the current expenses of the county, and a special tax, in certain contingencies, for particular purposes, such as the erection of court houses, jails and other necessary county buildings.—Code, 1876, §§ 435, 746, sub-div. 2, 820.

In view of these principles the writ of *mandamus* was properly refused by the circuit court, and its judgment is affirmed.