(80 South. 801)

STEVENS, Treasurer, v. HAWKINS, Tax Collector. (6 Div. 858.)

(Supreme Court of Alabama. Jan. 16, 1919.)

TAXATION &#9758;316—ASSESSORS—COMMISSIONS.

Where a tax assessor was in office in Jefferson county in 1915, and his term of office was extended by statute to 1917, and in 1916 the three-mill tax for school purposes was adopted in such county under the constitutional amendment adopted at the general election in November, 1916, pursuant to Act March 17, 1915, and the Enabling Act of September 10, 1915 (Acts 1915, pp. 107, 360), he was entitled to commissions on the "three-mill tax fund" collected in the county, despite Code 1907, § 3693, and Acts 1915, pp. 401, 402, 448, §§ 27, 149.

---

Appeal from Circuit Court, Jefferson County; Hugh A. Locke, Judge.

Action between Frank Stevens, as Treasurer, etc., and James F. Hawkins, as Tax Collector, etc. Decree for the latter, and the former appeals. Affirmed.

Fred G. Moore and Jerre C. King, both of Birmingham, for appellant.

E. N. Hamill, of Birmingham, for appellee.

THOMAS, J. The question for decision is whether the tax assessor is entitled to commissions on the "three-mill school tax fund" collected in Jefferson county.

The constitutional amendment was adopted at the general election in November, 1916, pursuant to the act of March 17, 1915, and the Enabling Act of September 10, 1915 (Gen. Acts 1915, pp. 107, 360). By the former is provided the power of the several counties of the state (so declaring, as was provided by the amendment) "to levy and collect a special county tax not exceeding thirty cents on each one hundred dollars worth of taxable property in such counties in addition to that now authorized or that may hereafter be authorized" for public schools (section 1); and it is further provided that the funds arising from this source—county or district—shall be expended for the exclusive benefit of the county or district, as the law may direct (page 108, § 3).

The enabling act provided for elections to authorize any county and any school district, now existing or hereafter formed in any county, to levy and collect a special tax for public school purposes, not exceeding 30 cents on each $100 worth of taxable property in such county and in such school district; and, if it appears as the result of such election that a majority of those voting in said election voted for such taxation, "the court of county commissioners or other governing body, shall levy said special tax and cause the tax assessor to assess the same on the taxable property in said county, or in said school district, as the case may be." Gen. Acts 1915, pp. 360, 362, § 4. Section 5 provides that—

"Whenever such a levy as is provided for in this act is made, it shall be the duty of the tax collector within and for that county to collect such a tax in the same manner and under the same requirements and laws as the taxes of the state are collected, and he shall keep said amount separate and apart from all other funds and keep a clear and distinct account thereof showing what amount is paid and turn the same over to the county treasurer of public school funds, whose duty it shall be to receipt therefor and pay out the same on monthly pay rolls with the authority and approval of the county board of education, upon uniform blanks prescribed by the state superintendent of education: provided that the funds arising from levying the special tax for school purposes in any school district, shall be used for the exclusive benefit of the public schools of such district; and in the case of incorporated cities and towns shall be paid over to the treasurer of said incorporated city or town, to be used for the exclusive benefit thereof."

Thereafter, on September 14, 1915, the Revenue Act, "To provide for the assessment, valuation and equalization of values of real and personal property for taxation," etc., was approved. Gen. Acts 1915, pp. 386–488. A reference to the Journals of the Legislature discloses the fact that the enabling act adverted to bore a number, H. 1428, that would indicate its introduction in the House subsequent to the Revenue Act, No. H. 850, and that the latter act was approved by the Governor four days after his approval of the enabling act; and that both bills were pending in the Legislature at the same time.

The Revenue Act carried into it section 2097 of the Code of 1907, with the proviso that—

"After the expiration of the present terms of tax assessors, no commission shall be allowed or received on any assessments of any local or special county school taxes." Gen. Acts 1915, pp. 401, 402, § 27.

A like provision is found in section 149, p. 448, as to the compensation of tax collectors. Thus the Revenue Act was made to refer to the three-mill school tax, and the Enabling Act relating thereto, for the then terms of tax assessors and collectors.

The commissions of tax assessors theretofore were fixed by statute on state taxes, whether general or special, assessed by them at the rate indicated in the statute; and "the same rate of commissions on the amount of county taxes, whether general or special (but not on each separately), regularly assessed, carried up or extended on the assessment book, giving duplicate receipts to the tax collector for all amounts so paid him," was allowed. Code 1907, § 2097. The same rate of commissions was fixed by section 27 of the Revenue Act (Gen. Acts 1915, pp. 401, 402), with the proviso, hereinbefore set out, extending the allowance of commissions to that official to "the expiration of the present terms of tax assessors," so limiting it as not to extend to or be allowed "on any assessments of any local or special county school taxes" after the expiration of such terms.

The statute of force at the date of the adoption of the Revenue Act (Gen. Acts 1915) made it a part of the duties of tax assessors to make a condensed statement of assessments and of poll taxes and to enter the same in books, and, when the court of county commissioners had completed its examination of assessments and the county taxes had been levied, the assessor was required to correct the book of assessments in accordance with the decisions of such court (court of county commissioners or board of revenue) and extend "opposite the name of each taxpayer the aggregate amount of state, county and special

taxes with which such taxpayer is chargeable." Acts 1909, Sp. Sess. p. 180, §§ 2, 3, amending sections 2122, 2156, of the Code of 1907. In section 51 of the Revenue Act (Acts 1915, p. 408), it is provided that—

"The assessor must make and enter in an assessment book suitably ruled and substantially bound, a condensed statement of all assessments made during each tax year, showing in separate columns the name of the owner, a description of the real estate, the assessed value thereof, the value of the personal property assessed for taxation, and the assessor shall compute and enter opposite the name of each taxpayer the aggregate amount of state, county and special taxes with which such taxpayer is charged. When the county board of equalization has completed its hearing of objections to assessments and the boards of arbitration have made their award, the tax assessor shall complete the said book by making the proper entries therein, and foot up at the bottom of each page the aggregate amount of such taxes and carry his footings from page to page and show in conclusion the aggregate of all such taxes."

In section 4 of the Enabling Act (Acts 1915, p. 362), the tax assessor is required to assess the special tax levied by the court of county commissioners under said act on the taxable property in said county or in the school district, as the case might be.

The provision of former Constitutions (article 9, § 1, Const. 1867, and article 10, § 1, Const. 1875) as to the fund arising from the collection of the poll tax was construed in Shaver v. Robinson, 59 Ala. 195, holding that the moneys derived from poll tax and required to be "applied exclusively" to the public school fund must bear its pro rata share of the expense of assessment and collection. This decision bears strong analogy to the question before us. The tax assessor in question was in office in Jefferson county in 1915, and his term of office was extended by statute to 1917. Osborn v. Henry, 76 South. 119, 121.[1] During his term the three-mill tax

for school purposes was adopted in that county, and thereafter that tax was levied, assessed, and collected. As compensation for the discharge of his duty as to such assessments by the tax assessor, the county treasurer withheld a sum, according to the rate fixed for commissions due tax assessors for the discharge of duties as to the assessment of such three-mill tax, and would have paid the same to said official had he not been prevented in the instant suit by injunction from so doing.

It is averred in respondent's answer that D. E. McLendon as such tax assessor, did assess said taxes and make up and extend the amount thereof on the books of assessments, as required by law, so that the amount thereof was shown and could be kept separate and apart from other taxes, and did all that the law required of him with reference thereto. In fact, it is not averred in pleading or insisted that the tax assessor did not perform the services required of him under the law as to such taxes, or that the services were not performed within the term in existence when the act in question was adopted in 1915.

The declarations of our court that the law of fees and costs are penal and strictly construed (Code, § 3693), that additional duties may be imposed upon public officials without additional compensation (Davis v. Curtis, 192 Ala. 64, 68 South. 419; Mobile County v. Williams, 180 Ala. 639, 61 South. 963; Torbert v. Hale County, 131 Ala. 143, 30 South. 453), and that no fees can be charged by and allowed to a public official unless expressly authorized by law (Davis v. Curtis, supra), will not require a different conclusion.

The circuit court, in equity, properly sustained demurrer to the bill, and dissolved the injunction. That decree is affirmed.

Affirmed.

ANDERSON, C. J., and MAYFIELD and SOMERVILLE, JJ., concur.

---

[1] 200 Ala. 353.