(86 South. 44)

## JEFFERSON COUNTY v. HENRY, County Treasurer. (6 Div. 98.)

(Supreme Court of Alabama. June 17, 1920.)

Counties ⬥161—Surplus of special sanitary fund cannot be diverted to payment of maturing road bonds.

Surplus in sanitary fund of Jefferson county, created under Acts 1901, p. 1722, by a levy of a special tax of one-twentieth of 1 per cent. on all property in the county, over and above current charges provided for, cannot be legally diverted by the county and applied to other uses, as payment of a maturing issue of county road bonds, while the bonded principal debt of the sanitary fund remains unpaid; the statute having appropriated the surplus to payment of the bonded principal debt.

Appeal from Circuit Court, Jefferson County; Romain Boyd, Judge.

Petition by Jefferson County for mandamus to compel M. V. Henry, as County Treasurer, to convey certain moneys from the sanitary fund into the general fund of the county. From an order sustaining demurrers to the petition, petitioner appeals. Affirmed.

W. K. Terry, of Birmingham, for appellant.

The excess of the proceeds of a tax levy for special purposes may be applied to other legitimate purposes of the county. 72 South. 613; 11 Cyc. 510 and 583.

Joseph R. Tate, of Birmingham, for appellee.

After quoting section 11, p. 550, Terry's Local Laws of Jefferson County, and section 215, Const. 1901, counsel insist that money held for a specific purpose in one fund cannot be transferred for use in the payment of other obligations of the county. 137 Ala. 375, 34 South. 398; 72 South. 613.

SOMERVILLE, J. The county of Jefferson seeks by writ of mandamus to compel the respondent, as county treasurer, to transfer from the sanitary fund to the general fund of the county the sum of $50,000, which

is alleged to be an existing surplus in the sanitary fund. This fund was created, under the act of February 28, 1901 (Gen. Sess. Acts 1901, p. 1722; Terry's Local Laws of Jefferson County, p. 547), by the levy of a special tax of one-twentieth of 1 per cent. on all property in the county, as generally assessed, and section 11 of the act further declares:

"The tax so, levied and collected to be held exclusively as a sanitary fund to be used and applied exclusively to the payment of the interest on the sanitary bonds herein authorized to be issued, and to keeping in repair the sanitary system of the county and protect the water supplies, *and the surplus, if any, to be used by said Board of Revenue for the payment of the principal of said bonds.*" (Italics supplied.)

The petition shows that $500,000 of these bonds have been issued, bearing interest at 4½ per cent. per annum, and maturing as to principal in 1931; that there is now to the credit of said fund $205,000; that the present yield of said special tax is $85,000, which will increase with the future increase in the assessed values of property; that $54,045 per annum will amply care for all the objects which are a current charge on said fund; and that the present surplus, after the withdrawal of $50,000, aided by the annual surplus for 11 years hence—even on the present basis—will suffice to discharge in full the bonded indebtedness at its maturity. The petition shows that $50,000 of county road bonds will mature on July 15, 1920, and that the county is without the means to pay them, unless aided by the sanitary fund.

The question presented by this appeal is whether, notwithstanding the language of the act, and consistently with its specific appropriation of any surplus of the sanitary fund over and above the current charges provided for to the payment of the bonded principal, that surplus, or any part of it, may be legally diverted by the county and applied to other and foreign uses while the bonded principal remains unpaid.

"Where special county funds are authorized, and are in fact raised for a particular purpose, they must be applied thereto and cannot be diverted to any other purpose, or transferred to any other fund, unless a surplus remains after satisfying the indebtedness or the demands for which the fund was originally created; and where a statute directs the disposition of the surplus, or prohibits its disposition in a certain way, such direction or prohibition must be followed in cases in which it is applicable." 15 Corp. Jur. 584.

The authorities cited in support of this text are numerous and without any dissent, as indeed would be expected from the very nature of the principle involved. The requirement of the statute is plain, and courts

cannot sanction its violation upon any theory of fiscal expedience or necessity, however weighty it may seem. So far as we are advised, no court has ever permitted the diversion of a special fund such as this in defiance of the mandate of the law of its creation.

Counsel for petitioner cites as authority for his contention the case of Board of Revenue of Shelby County v. Farson, 197 Ala. 375, 72 South. 613, L. R. A. 1918B, 881. That case is not in point, however, for two reasons: (1) The statute under which the special tax was levied for building a county courthouse (Code, § 138) does not direct or limit the disposition to be made of any surplus of the tax; and (2) the opinion goes no further than to say that such a surplus could be applied to other county debts after the installments due on the courthouse were paid.

We are clear in the conclusion that the petitioner was not entitled to the relief prayed for, as matter of law, and the demurrer to the petition was therefore properly sustained, and the writ properly denied.

Affirmed.

ANDERSON, C. J., and McCLELLAN and THOMAS, JJ., concur.

⬥For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes