(36 South. 46)

**WEAKLEY et al. v. HENRY, County Treasurer. (6 Div. 108.)**

(Supreme Court of Alabama. June 30, 1920.)

**1. Counties ⬦➡100—Claims subject to allowance by board of revenue within statute providing for summary judgments.**

Claims that are subject to allowance by the board of revenue as "allowed claims" against the county are within the purview of Code 1907, § 5938, authorizing summary judgments against the county treasurer and sureties for failure to pay allowed claims.

**2. Mandamus ⬦➡106—Payment of fixed charges against county may be compelled by mandamus.**

Payment of claims that are fixed charges by law against a county, as a special claim out of a special fund, and not required to be allowed by boards of revenue, may be compelled by mandamus.

**3. Mandamus ⬦➡106—Lies to enforce payment of claim against specific fund not subject to allowance.**

Where a claim against a county, in and of itself, is a claim on a specific fund, and not subject to allowance by the board of revenue, mandamus will lie to enforce its payment in a proper case; i. e., mandamus will lie against the county treasurer only where the claim is such that by operation of law it becomes a claim under certain conditions against a specific fund without allowance.

**4. Counties ⬦➡100 — Movants with allowed claim against county may have summary judgment against treasurer and sureties.**

If movants for summary judgment against a county treasurer and sureties have an allowed claim against the county, which is denied by the treasurer, judgment may be rendered for them, under Code 1907, § 5938.

**5. Municipal corporations ⬦➡57—Powers which municipalities may exercise stated.**

Municipal corporations may exercise only (1) the powers granted in express terms; (2) those necessarily implied in or incident to the powers expressly conferred; and (3) those indispensably necessary to the accomplishment of the declared objects and purposes of the municipality.

**6. Counties ⬦➡113(1) — Are governmental agencies, not liable for demands imposed by agent not authorized.**

Counties are governmental agencies of the state, chargeable with and liable for only those claims and demands which the law imposes on them or authorizes them to contract, and no officer can charge the county with any claim due him, unless expressly authorized by law.

**7. Counties ⬦➡165—Warrant to pay brokers for sale of bonds held not lawful claim.**

Particularly in view of Acts 1915, p. 573, § 4, under Code 1907, § 170, warrant issued by board of revenue of county for compensation or commission to brokers for the sale of road bonds, amounting to $50,000 on a $500,000 is-sue, so that the county would receive less than the face amount, and the bonds carry more than their face interest of 5 per cent., through having been sold at a discount, *held* not a lawful and valid claim against the county.

Appeal from Circuit Court, Jefferson County; Dan A. Green, Judge.

John B. Weakley and Eugene Fies sought by motion for summary judgment and by petition for mandamus to compel M. V. Henry, as Treasurer of Jefferson County, to pay a warrant issued to them by the county board. From an order denying their motion for a summary judgment, as well as for a mandamus, petitioners appeal. Affirmed.

W. K. Terry, Johnston & Cocke, and Gibson & Davis, all of Birmingham, for appellants.

The question for decision is: Has the board of revenue for Jefferson county the authority to employ or contract with bond brokers or dealers, negotiate for purchasers, or to procure purchasers for county bonds? The trial court gave a too narrow construction to section 170, Code 1907. Boards of revenue, under the enlarged powers conferred by law, possess a discretion not subject to revision by the courts in the management of county affairs. 193 Ala. 521, 68 South. 971; 196 Ala. 481, 71 South. 704; 240 Mo. 680, 145 S. W. 8, 39 L. R. A. (N. S.) 248; 75 Minn. 456, 78 N. W. 115; 37 Colo. 344, 86 Pac. 75; 126 Tenn. 427, 150 S. W. 90, Ann. Cas. 1913E, 83; 156 N. Y. 363, 50 N. E. 973; 124 Ark. 337, 187 S. W. 315; 74 N. W. 430; 46 Tex. Civ. App. 547, 102 S. W. 1159. The payment of a commission was not a violation of section 170. 76 South. 479; Local Acts 1903, § 4, and authorities supra.

Joseph R. Tate, James G. Davis, and John C. Morrow, all of Birmingham, for appellee.

The board of revenue was without power or authority to issue the warrant. Acts 1915, p. 573; 158 Ala. 311, 48 South. 55; 117 Ala. 203, 23 South. 807; 172 Ala. 155, 54 South. 995; 9 Ala. App. 257, 62 South. 323; 56 Ala. 64; 30 Ala. 130; 127 Ala. 563, 29 South. 29; 66 Ala. 187; 73 Ala. 550. The authority to sell cannot be delegated. 83 Ala. 384, 3 South. 715; 111 Ala. 248, 19 South. 995; 50 Ala. 347; 71 Ala. 271.

THOMAS, J. The petition or motion is to compel the payment of the warrant drawn by the board of revenue of Jefferson county on the treasurer of that county, as compensation and commissions for services rendered by petitioners in negotiating the sale of $500,-000 of the county road bonds. The question for decision was made by two separate proceedings, which, by agreement of the parties, have been consolidated, since the relief sought is identical.

⬦➡For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

The one petition seeks mandamus against said treasurer, commanding him to show cause why a peremptory writ should not be issued, commanding him to pay petitioners on presentation of their warrant; the other seeks summary judgment against that official, pursuant to the provisions of Code 1907, § 5938. That statutory provision for such judgments against county treasurers and sureties for failure to pay "allowed claims" is as follows:

"If any county treasurer fail, on demand, and without good excuse, to pay an allowed claim against the county, when there are funds in the treasury to pay the same, judgment may be obtained against him and his sureties, or any or either of them, on five days' notice, on motion in the circuit court of the county, in the name of the party to whom the claim is payable, his legal representatives, or assigns, for the amount of the claim, with interest from the time of the demand, and ten per cent. damages and costs."

The treasurer bases his refusal on the following grounds:

"That the $500,000, face value, of bonds referred to in the petition, bear interest at the rate of 5 per centum per annum, and that by virtue of section 170 of the Code of Alabama (1907), the same may not be sold for less than their face value;" that he "is advised and therefore avers that the effect of the payment of the commission upon the face of the warrant presented to respondent for payment, and described in the petition, would make the sale of said bonds net the county of Jefferson approximately 90 per centum in lieu of face value thereof as required by law;" and that "for divers other reasons appearing upon the record of said proceeding set out in the petition * * * respondent says that said warrant was illegal, null and void."

The question as to the proper remedy available to petitioners is not presented in the answer of respondent or by demurrer, but both remedies being sought concurrently and by agreement of counsel, considered together, a decision of the question is made desirable.

[1, 2] The resolution of allowance of the claim by the board of revenue required its payment "out of moneys in the road construction fund in the treasury not otherwise appropriated," and the warrant issued and delivered to petitioners was pursuant to this resolution. Claims of counties that are subject to allowance by the board of revenue as an "allowed claim" against the county are held within the purview of Code, § 5938. Compton v. Marengo County Bank, 82 South. 159;[1] Brown, Treas., v. Gay-Padgett, 186 Ala. 561, 65 South. 333; Norwood v. Goldsmith, 162 Ala. 171, 50 South. 394; Hines v. Salter, 154 Ala. 248, 45 South. 587; Arrington v. Van Houton, 44 Ala. 284. Claims that are a fixed charge by law against the county—as a special claim out of a special fund, and not required to be "allowed" by boards of revenue—may be compelled of payment by manda-

mus. Farson, Son & Co. v. Bird, Treas., 197 Ala. 384, 72 South. 550; Wyker v. Francis, 120 Ala. 509, 24 South. 895; Sessions v. Boykin, 78 Ala. 328.

In Farson v. Bird, Treas., supra, the application for mandamus was to compel the treasurer of Shelby county to pay certain past-due county warrants held by petitioner, for the construction of the courthouse and which were required to be paid from a special fund; held that mandamus would lie to compel a treasurer to pay a special claim out of a special fund, and in some cases it will lie although an action might be maintained against him for such failure.

[3, 4] It follows from these authorities that, where a claim in and of itself is a claim out of a specific fund and not subject to allowance by the board of revenue, mandamus will lie to enforce its payment in a proper case; that is to say, mandamus will lie against the county treasurer only where the claim is such that by operation of law it becomes a claim under certain conditions against a specific fund without allowance by the board of revenue. Lovelady v. Copeland, 198 Ala. 625, 628, 73 South. 948. If movants have an "allowed claim" against Jefferson county that is denied by its treasurer, judgment may be rendered under the provisions of Code, § 5938.

We are brought to a decision of the real question raised by the motion of Weakley and Fies, and the answer of respondent treasurer. Is the warrant for the payment of compensation or commission to petitioners for the sale of the bonds a lawful and valid claim against the county? A provision of the statute (Code, § 170) in respect to this is:

"The denominations of the bonds, the time for which the same, shall run, the place of payment, and the rate of interest to be paid on the same, shall be fixed by the court of county commissioners or board of revenue issuing the same, but no bonds issued under the provisions of this article, shall bear a greater rate of interest than five per cent. per annum, and the same shall not be sold for less than face value."

This section of the statute finds its place in article 8 of chapter 11 of the Code (volume 1, p. 278), "County Bonds; Election as to Issue," providing for ordering an election for issuing bonds for public improvement, notice of election, holding the same, canvassing the returns, contest, requiring the record of the returning board to be recorded in the minutes of the board of revenue or court of county commissioners of the county in which the same is held, the issuance of bonds "by the court of county commissioners or board of revenue * * * in the amount and for the purposes mentioned in the notice of said election," declaring that bonds so issued shall be "exempt from state, county and municipal taxation, and that the same shall have all the properties and protections of commercial paper." The subsequent sections of said ar-

---

[1] 203 Ala. 129.

ticle 8 declare that all bonds issued under authority of this article shall be signed by the probate judge and countersigned by the treasurer of the county in which the same are issued, make a like provision for interest coupons, declare that any irregularity in proceedings to authorize the issue does not invalidate the bonds issued, and "where no provisions are otherwise made herein, the general election laws of the state then in existence with regard to all notice, qualification of voters, official acts," etc.. shall govern. This article (8) provides a simple, yet comprehensive, system for public improvements, for the purpose of constructing, or paying debts created for constructing, public buildings, schoolhouses, and public roads, bridges, and such other purposes as are authorized by law. Code, § 158. The duty of issuing authorized bonds is placed on the court of county commissioners or board of revenue of the county by section 168 of the Code, and such bonds shall not "bear a greater rate of interest than five per cent. per annum, and the same shall not be sold for less than face value." Code, § 170. The Constitution has provided that the Legislature should have authority to pass general laws authorizing counties, cities, and other political subdivisions of counties to "issue bonds," after due authority by a majority vote by ballot of the qualified voters of such county, city, or other political subdivision of a county, voting upon the proposition. Const. § 222.

[5] The right and duty to "issue" the bonds placed by statute on courts of county commissioners or boards of revenue was that of issue and sale in exact conformance to and for the statutory purposes. For municipal corporations may exercise only the powers (1) granted in express terms; (2) those necessarily implied in or incident to the powers expressly conferred; (3) and those indispensably necessary to the accomplishment of the declared objects and purposes of the municipality. McCulloch v. State of Maryland, 4 Wheat. 316, 4 L. Ed. 579; Stokes v. City of Montgomery, 82 South. 663, 665; [2] Ex parte Selma, etc., 45 Ala. 696, 6 Am. Rep. 722; State v. Street, 117 Ala. 203, 211, 23 South. 807; Dallas County v. Dillard, 156 Ala. 354, 356, 47 South. 135, 18 L. R. A. (N. S.) 884; Kumpe v. Bynum, 158 Ala. 311, 48 South. 55; State v. Lincoln County, 18 Neb. 283, 25 N. W. 91; Lancaster v. Green, 54 Neb. 98, 74 N. W. 430.

Petitioners aver that on the 29th of December, 1919, the board of revenue of Jefferson county ordered an election to be held in said county for the purpose of submitting to the qualified electors of that county the proposition, to wit:

"Shall the county of Jefferson, Alabama, issue bonds to the amount of $5,000,000, bearing the rate of five per centum per annum, for the purpose of constructing public roads in said county?"

—which was authorized as shown by the exhibit of the canvass of the votes at the election held for such authorization. Though the allegations of the petition do not state the effect and scope of the warrant for which payment is said to be made out of the bridge and road fund, yet it was, in effect, for commissions to be paid out of a special fund, arising from special taxation and from the sale of the bonds in question, for of necessity the $500,000 proceeds of the sale of the bonds in compliance with law had been placed to the credit of that fund. Such special fund cannot be paid out, except for the purposes for which it was created. Can it, with reason, be contended that payments of agents' commissions in any sum are a part of the construction or maintenance of the public roads and bridges of Jefferson county? Should the warrant be paid from the funds already in the hands of the treasurer to the credit of that fund arising from special taxes or transferred thereto as a "surplus," would not such payment be a diversion of the special fund just the same as if payment be made out of the proceeds of the sale of the bonds; and would not such payment be not only a diversion of the proceeds of a special fund, but a diminution of the purchase price of the bonds in violation of section 170 of the Code?

In New Farley Nat. Bank v. County of Montgomery, 84 South. 815,[3] this court said of section 100 of the Constitution, inhibiting the extinguishment, except by payment, of obligations to a county, that evasions of these rules of law may not be given legality, though clothed by solemn resolutions, and that the inhibition of law operates directly upon county and municipal officers, and "it was never intended that so wholesome a rule of law should be avoided by so simple a device" as a remission of a part of past-due interest. Again in Jefferson County v. Henry, Treasurer (June 17, 1920) 86 South. 44,[4] where the board of revenue sought to transfer from the sanitary fund to the general fund of the county a sum which was alleged to be an existing surplus in the sanitary fund and authorized by law to be transferred, it was said:

"Where special county funds are authorized, and are in fact raised for a particular purpose, they must be applied thereto and cannot be diverted to any other purpose, or transferred to any other fund, unless a surplus remains. * * * The requirement of the statute is plain, and courts cannot sanction its violation upon any theory of fiscal expedience or necessity, however weighty it may seem."

Such salutary admonitions and the words of the learned trial judge in the instant case, "The authority to create indebtedness against a county and to expend public funds is a responsible one and should be jealously guarded, and strictly construed," and "courts

2 203 Ala. 307.
204 ALA.—30

3 203 Ala. 654.    4 Ante, p. 381.

should be reluctant to set precedents that might under other circumstances or at other times lead to disastrous results," are sufficient answer to the necessity urged as impelling the governing body of the county to the allowance of the claim. Appellants' counsel seriously insist that the allowance of the compensation of $50,000 to brokers as the reasonable value of their services in effectuating a sale of $500,000 of the county's bonds was a proper exercise of the power to issue the bonds, and was not the allowance of a commission thereon, in a sense as amounted to a sale of the bonds for less than their "face value."

In recent discussion of the enlarged powers conferred by law upon boards of revenue, in the construction of a courthouse, and the right to employ architects and superintendents (Board of Rev. v. Merrill, 193 Ala. 521, 68 South. 971), and of the purchase of proper equipment and machinery for the building, maintenance, and superintendence of public roads (Ensley Motor Car Co. v. O'Rear, 196 Ala. 481, 71 South. 704), is not found authority for the action of the board of revenue in making instant allowance for compensation from the moneys of the special fund in question. Mr. Dillon, in his work on Municipal Corporations (5th Ed.) § 895, said:

"Express statutory authority to issue bonds implies the power to issue them in the ordinary and usual manner; and the municipality may, by virtue thereof, sell the bonds and use the proceeds for the purposes intended, that being the mode most generally adopted in similar cases. When the statute prescribes the method of sale, such method is the only method that can be followed. Hence, if it is required that the bonds shall be sold to the highest bidder after advertisement, no other disposition of the bonds can be made. Power of a municipality to issue and sell bonds carries with it the implied power to secure such reasonable and necessary assistance as may be requisite to bring about an advantageous sale, and to this end the municipality, acting in good faith, may employ a broker regularly engaged in the business."

Among the authorities cited in support of this text is Manitou v. First Nat. Bank, 37 Colo. 344, 86 Pac. 75, which supports the right of the city to pay a broker for selling the bonds at their face value when the act required the same to be sold at not less than face value. This authority is grounded, primarily, on Village of Ft. Edward v. Fish, 156 N. Y. 363, 50 N. E. 973, which in turn is rested on Mayor v. Sands, 105 N. Y. 210, 215, 11 N. E. 820. In Village of Ft. Edward v. Fish, supra, the justice said:

"The actual power was to borrow money by issuing and selling bonds at not less than par. The express power to issue bonds involved the implied power to pay for engraving, printing, and the like. The express power to sell bonds doubtless carried with it the implied power to pay counsel for an opinion as to the validity of the bonds, as was done in this case, and possibly to pay a commission to brokers for selling the bonds. These expenses were incidental to the duty imposed, and fairly came within the scope of the main power."

It will be noted that the power to pay commissions is not emphasized, because it was not necessary to the decision. Since these cases derive authority largely from Mayor v. Sands, supra, we should observe what the court there said of the statute under which that sale was made:

"No question is made as to the legality of this issue, or but that the whole proceeds of the bonds, including premiums, excepting the check in question, were applied to the purposes of the county, or paid over to its treasurer by the comptroller. It would be difficult to conceive of a grant of power conferred in broader or more comprehensive language, and which could be less restricted by conditions and limitations upon an agent's authority. No limit is imposed upon the amount of bonds to be issued, except that implied from the use to which they were to be devoted, and no restriction as to the terms upon which they were to be disposed of, or the amount of the expenses to be incurred in their preparation, negotiation and transfer is found in the act."

Since Armstrong v. Village of Ft. Edward, 159 N. Y. 315, 317, 53 N. E. 1116, and Brownell v. Town of Greenwich, 114 N. Y. 518, 529, 22 N. E. 24, 4 L. R. A. 685, are grounded on the Sands Case, supra, these cases are not of persuasive authority, as the broad authority of the statute adverted to in the Sands Case, was overlooked in the latter cases. In Kentucky it was held that "the power of the fiscal court to fund the county indebtedness conferred by Ky. St. 1903, § 1852, providing that any fiscal court of the county may collect any outstanding bonds and substitute therefore new bonds, etc., carries with it the power to employ such agents and attorneys as may be necessary for that purpose." Slayton v. Rogers, 128 Ky. 106, 107, 107 S. W. 696, 697, on authority of Garrard County Court v. McKee, 11 Bush (Ky.) 234 (declaring the right of the county to employ counsel to defend a suit against it). Mercer County Court v. Pearson (Ky.) 71 S. W. 639, where a statute authorizing a county to issue railroad bonds, and providing that they be deposited with a trustee to be delivered to the railroad company as portions of the work of construction were completed, carried no provision for compensating such trustee, held that the trustee was entitled to compensation for services and for fees for counsel employed to advise him, to be collected from the county. It will be noted that the Kentucky statute required the services of the trustee; hence the implied authority to compensate him. Moreover, authority was contained in section 4146 of the Kentucky Statutes 1903, to employ a competent person to settle with the sheriff,

and it was held that this power carried with it the power to employ agents and attorneys necessary for the purpose of making the settlement. Mr. Dillon includes in his text (section 895) the following:

"In disposing of the bonds, municipalities are frequently prohibited from selling them 'at less than the par value thereof.' The words 'par value,' when so used, mean a value equal to the face of the bonds and accrued interest to date of sale." "Evasions of the requirements to sell at not less than par by side stipulations or understandings as to 'commissions' are not uncommon, and provisions for payment of commissions will be carefully scrutinized by the courts as to their bona fides. Wheelen's Appeal, 108 Pa. St. 162; Smith v. County of Los Angeles, 99 Cal. 628; Hunt v. Fawcett, 8 Wash. 396."

In McQuillin's Municipal Corporations, vol. 5, § 2303, is the statement that—

"Power granted a municipality to issue bonds includes power to sell them, and power to sell them includes power to employ a broker to effect the sale, or even one not a broker."

This statement is raised on the authority of Brownell v. Town of Greenwich, supra, and Armstrong v. Ft. Edward, supra. Adverting again to the two latter cases, we have noted that both are largely rested on Mayor v. Sands, supra, where the justice points out that no statutory limit was imposed on the amount of the bonds to be issued, except that implied from the use to which they were to be devoted, and no restriction as to the terms upon which they were to be disposed of, or the amount of the expenses to be incurred in their preparation, negotiation and transfer. It would thus appear that the texts of Dillon and McQuillin are not conclusive.

Appellant further relies on Lancaster County v. Green, 54 Neb. 98, 101, 74 N. W. 430, where the power to employ "necessary" agents to assist in refunding bonds of the county was approved, and that a county board was held with authority to make allowances for services and expenses incurred in connection with the examination and approval of bonds in Board of Com'rs of Clear Creek County v. Speer, 124 Ark. 337, 187 S. W. 315. In the latter case the Arkansas court disposes of the question as follows:

"It is also contended that the board was without authority to enter into a contract for the allowance of compensation to appellees for their expenses and services in preparation and approval of the bonds, but it is seen from the terms of the contract that this was a part of the contract for the sale of the bonds; and since the authority of the board of commissioners to fix the price of the bonds was ample, the agreement to make this allowance in the way of reduction of the price of the bonds was within the scope of its authority. The effect of the contract was an agreement to accept the stipulated net amount as the price of the bonds and to consider the services rendered by appellees in fixing the price of the bonds. The decision of the case rests upon the law of the state of Oklahoma with respect to the power of the board, and we find nothing which restricts that power to the extent contended for by counsel."

The Oklahoma cases referred to were Sequoyah County v. Helms, 40 Okl. 565, 139 Pac. 958 (where, under a statute conferring authority upon the board of county commissioners to present an accusation and bring an action for the removal of officials, it was held that such board may direct an appeal or dismiss the same), and Ironside v. State ex rel. Caldwell Co., 46 Okl. 41, 148 Pac. 97, where only the authority of the county attorney to compromise a judgment for the county was for decision.

The position of appellants is sustained in Church v. Hadley, 240 Mo. 680, 145 S. W. 8, 39 L. R. A. (N. S.) 248, 249, where the burning of the state capitol building created an emergency for the securing of money with which to replace it, within the provisions of the Constitution authorizing the submission to the voters of a bond issue because of unforeseen emergency; it being held:

That the "fund commissioners," after having failed to sell the bonds by their own effort, were authorized to pay a commission to brokers to dispose of them "under a statute providing for the issuance of a certain amount of bonds to build a state capitol, which shall be sold for not less than par, and the proceeds, which are estimated by the statute to equal the aggregate amount of bonds authorized to be issued, 'more or less,' appropriated to the construction of the building."

The justice writing finds that the expression "appropriating the proceeds of the sale, 'more or less,' to the construction of the building," is a statutory declaration of the necessity for incidental expense which might reduce the proceeds less than the amount for which the bonds sold, to wit, their face value. The justice said:

"If the Legislature did not have in mind that the expenses necessary to a sale should be taken out of the money, there is no sense in the use of the term 'more or less.'"

In State v. West Duluth Land Co., 75 Minn. 456, 467, 78 N. W. 115, the bonds subject to sale and allowance of commissions were those of the county where the statute forbade a sale at less than face value. The validity of the bond issue was questioned. In the contract of sale it was stipulated that the broker should pay for lithographing and printing the blank bonds, and for legal services and all other expenses incident to a sale, for which, and as compensation in full, he was to receive 10 per cent. of the face value of the bonds sold. The court said:

"On these facts we are asked to hold that there was a plain violation of section 4 [requiring the bonds to be sold at face value],

and that the bonds are void. There might be cases where the facts would very conclusively show that an agreed compensation of 10 per cent. for the sale of bonds was a palpable evasion of such a section, but we have no such case before us. We cannot say, as a matter of law, that under the conditions of this contract there was a violation of section 4, which forbids a sale of the bonds at less than par value"

—and the bond issue was held valid.

In Miller v. Park City, Ann. Cas. 1913E, 83 (126 Tenn. 427, 150 S. W. 90) it was held of a provision in the statutes of Tennessee that a sale of municipal bonds at less than their par value was not violated by an allowance made for attorney's fees and other expenses incident to the sale, such as printing, lithographing, postage, etc. A careful consideration of this case will show that such allowance was made to the purchaser, and it was of the "amount expended for legal services and other expenses incident to issuance of the bonds," and that "the city council properly appropriates enough from the general fund to reimburse the bond on account of such deductions." The court guards the decision as follows:

"It is needless to say that if charges of this kind are sought to be made the cover for an actual sale at less than par, or if they are grossly unreasonable and attended by marks of bad faith, the court would not hesitate to declare such transactions fraudulent and void. But in this case there is not only no proof of fraud, but the history of the transaction, as disclosed by the record, evidences the best of faith. The negotiation of the bonds pended from the 1st of May until the 24th of June, during which time the attorneys selected to pass upon them were corresponding with the defendants about various questions concerning the validity of the bonds. There was no haste, no concealment, and the bid accepted was admittedly the highest and best bid offered. It should be stated that the city council had passed an ordinance upon its second reading, and would have passed it upon its third reading, but for the injunction in this case, which had, for its effect, the transfer from city funds to this particular bond fund of a sufficient sum to cover the expenses of the bond sale. With this done, it is undoubtedly true that the bonds were sold at par."

The foregoing are the important general authorities said to be analogous to the case presented by this appeal.

Appellants cite, as analogous, the following cases by this court: Ala. City, etc., v. Gadsden, 185 Ala. 263, 268, 64 South. 91, Ann. Cas. 1916C, 573, where it was held that a municipal corporation may contract for the payment of interest on warrants drawn to cover its ordinary debts, in the absence of constitutional or statutory inhibition; Allen v. Lafayette, 89 Ala. 641, 8 South. 30, 9 L. R. A. 497, holding that the municipality may create a debt in the accomplishment of an object clearly within its "power and reasonably essential to the attainment of their charter power"; White v. Mayor, 119 Ala. 476, 480, 23 South. 999, saying that courts cannot determine what municipal expenditures are necessary to meet the current legitimate municipal expenses. These cases are distinguishable from the instant case, or are not applicable to its facts.

[6] After all that may be said of the necessity for the proposed action on the part of the board of revenue, it is settled in this jurisdiction that counties are governmental agencies of the state (Ex parte Selma, etc., supra; 7 R. C. L. § 14, p. 936), chargeable with and liable for only those claims and demands which the law imposes upon them or authorizes them to contract, and that no officer can charge the county with the payment of any claim due him, however meritorious, or whatever benefit the county may derive therefrom, unless expressly, or by necessary implication, authorized by law. Stevens v. Hawkins, 202 Ala. 499, 80 South. 801, 802; Ensley Motor Car Co. v. O'Rear, supra; Davis v. Curtis, 192 Ala. 64, 67, 68 South. 419; Mobile County v. Williams, 180 Ala. 639, 61 South. 963; Board of Rev., etc., v. State ex rel. Drago, 172 Ala. 155, 54 South. 995; Torbert v. Hale County, 131 Ala. 143, 30 South. 453; Naftel v. Montgomery County, 127 Ala. 563, 29 South. 29; Jack v. Moore, 66 Ala. 184; Shaver v. Robinson, 59 Ala. 195; Simpson v. Lauderdale County, 56 Ala. 64, 68; Barbour County v. Clark, 50 Ala. 416, 418; Posey v. Mobile County, 50 Ala. 6; Mitchell v. Tallapoosa County, 30 Ala. 130; Van Eppes v. Com'rs Court, Mobile County, 25 Ala. 460; 2 Kent, Comm. 274.

[7] The jurisdiction of a county and its governing officials is given general expression in chapter 11, Code, p. 264 et seq. The authority of the board of revenue as to the issue and sale of bonds is found in article 8 of said chapter, §§ 158–174, and is expressed in clear and unambiguous terms. Section 170 contains the limitation that "no bonds issued under the provisions of this article shall bear a greater rate of interest than five per cent. per annum, and the same shall not be sold for less than face value." Accordingly, then, this statute is the fundamental law, and the power of the board of revenue is only coextensive with the power expressly granted by the statute, or necessarily or reasonably implied from its general powers; that is, the power to incur or subject to obligations and to levy taxes on the people of the county and on their property, is to be exercised only in furtherance of county and public purposes and only as prescribed by statute. Ex parte Selma, etc., supra. No implication necessarily and reasonably flows from the grant of the right to make the public improvements, and the imposition of the duty on the board of revenue to issue the county's obligations, that would warrant the delegation and exer-

cise of this power to and by third parties for compensation, where the exercise of the right and a discharge of the duty by the board of revenue must be without compensation. If, therefore, a commission or allowance be granted to or for the benefit of the purchasers of the bonds, it would offend the statute requiring that no such bonds should bear a greater rate of interest than 5 per cent. per annum, and if compensation or allowance be given for or on its sale, the same would violate the provision of the statute that the bonds "shall not be sold for less than face value."

Moreover, the statute (Gen. Acts 1915, § 4, p. 573) provides that the court of county commissioners, board of revenue, or like governing body of any county may transfer to the road fund of the county any surplus of general funds in the county treasury, or any part thereof, whenever in the judgment of such court or board it will promote the interest of the county to make such transfer, and any surplus of general funds so transferred "shall be used only for working the public roads or the building of bridges or otherwise improving the public roads of such county." If the warrant be paid as directed, it would violate this provision of the statute and for this reason the treasurer was authorized to refuse its payment. Board of Rev., Jefferson Co. v. Henry, Treas., 86 South. 44 [5] (present term); Ensley Motor Car Co. v. O'Rear, supra; State ex rel. Greene v. Coleman, 73 Ala. 550; State ex rel. Ellis v. Board of Rev. of Jefferson Co., 172 Ala. 190, 55 South. 179.

It may be well to say that, in issuing bonds, the board of revenue may pay from the proceeds only the reasonable and actual expense of the same—printing or lithographing, postage, and a reasonable attorney's fee. Such reasonable expense may be said to be that of construction and maintenance of the public improvements in question, and is within the purview of the Board of Revenue v. Merrill, supra, Ensley Motor Car Co. v. O'Rear, supra, and Smith v. McCutchen, Judge, 146 Ala. 455, 41 South. 619. For the law did not presuppose that all or any members of the board of revenue were attorneys, constructing engineers, or architects; that is to say, the legitimate expenses of administering the government in the matter of the issue of bonds for the purpose indicated by law may be paid from such proceeds, and no other sum.

It results from the foregoing that the motion for a summary judgment and the petition for writ of mandamus were each properly denied.

Affirmed.

ANDERSON, C. J., and McCLELLAN and SOMERVILLE, JJ., concur.

---

⬤For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

